# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**JUAN A. KINLEY,**

      **Petitioner,**

v.

                                    **Case No. 3:03–cv–127**

                                    **JUDGE MICHAEL H. WATSON**

**MARGARET BRADSHAW, Warden,**     **Magistrate Judge Michael R. Merz**

      **Respondent.**

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action under 28 U.S.C. § 2254.  This matter is before the Court upon the Magistrate Judge's Report and Recommendation of June 30, 2011 (ECF No. 67), in which the Magistrate Judge recommended denying habeas corpus relief.  Also before the Court are Petitioner's objections (ECF Nos. 74 and 75) and Respondent's response (ECF No. 76).

This matter is also before the Court upon the Magistrate Judge's Supplemental Report and Recommendation of September 14, 2011 (ECF No. 77), in which the Magistrate Judge addressed a limited number of Petitioner's objections and then reiterated his recommendation that the habeas corpus petition be dismissed with prejudice.  The Magistrate Judge added a recommendation that this Court deny Petitioner a certificate of appealability.  Also before the Court are Petitioner's objections (ECF No. 79) and Respondent's response to Petitioner's objections (ECF No. 80).

In both Reports and Recommendations, the Magistrate Judge specifically advised the parties of the deadline to file objections. The parties filed objections and responses and the time for filing any additional objections has expired.

## I. STANDARDS OF REVIEW

This Court reviews *de novo* those portions of the Report and Recommendations to which the parties objected. *See, e.g., Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002). In that regard, Fed. R. Civ. P. 72(b)(3) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3). Further, although "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings," *Thomas v. Arn*, 474 U.S. 140, 150 (1985), this Court has reviewed both Report and Recommendations *de novo*. *See, e.g., Delgado v. Brown*, 782 F.2d 79, 82 (7th Cir. 1986).

When reviewing the Magistrate Judge's conclusions and recommendations, the Court notes that the precise issue for it to decide is not whether the Magistrate Judge merely erred in any of his findings or conclusions. Rather, only if the Court determines that any part of the Magistrate Judge's

decision was clearly erroneous or contrary to law may the Court modify or set aside that part.  The "clearly erroneous" standard applies to the Magistrate Judge's factual findings.  A factual finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).  *See also Adams v. County Reg'l Water Dist. v. Vill. of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000). The "contrary to law" standard applies to the Magistrate Judge's legal conclusions.  Legal conclusions should be modified or set aside if they "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992).

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") that became effective prior to the filing of the instant petition apply to this case. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Under the AEDPA, a federal court shall not issue a writ of habeas corpus on a claim that the state courts adjudicated on the merits unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  Section 2254(d)(1)

circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.

Under § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent "when the state court confronts facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent" or "when the state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases." *Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406-07 (2000)).  A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct legal principle from the decisions of the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case.  *Coyle*, 260 F.3d at 699.  A federal habeas court may not find a state adjudication to be "unreasonable" simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  *Id*.  Rather, a state court's application of federal law is unreasonable "only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes." *Barker v. Yukins*, 199 F.3d 867, 872 (6th Cir. 1999).  Recently, the Supreme Court also clarified that in making the § 2254(d)(1) determination, a federal court in habeas corpus must confine its review to the record that was before the state court that adjudicated

the claim on the merits. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Further, § 2254(d)(2) prohibits a federal court from granting an application for habeas relief on a claim that the state courts adjudicated on the merits unless the state court adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In this regard, § 2254(e)(1) provides that the findings of fact of a state court are presumed to be correct and that a petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.

## II. PETITIONER'S CLAIMS

### A. Ground One: Improper Admission of Unreliable DNA Evidence.

In his first ground for relief, Petitioner argued that the trial court erred by admitting DNA evidence that was scientifically unreliable. (Petition, Doc. No. 2, at 9–14.) Petitioner essentially challenged the reliability of the protocol that Cellmark used to perform DNA testing of samples in his case as well as the statistical method that Cellmark used to estimate the frequency of a DNA pattern occurring.

The Magistrate Judge recommended that the Court deny Petitioner's claim as without merit and in the alternative as failing to state a claim in habeas corpus. (ECF No. 67, at PAGEID # 477–81.) Petitioner did not object to the Magistrate Judge's recommendation. Moreover, the Court is not persuaded that any part of

the Magistrate Judge's Report and Recommendations concerning Petitioner's first ground for relief was "clearly erroneous" or "contrary to law" sufficient to require this Court to modify or set it aside.  The Court agrees with and adopts the Magistrate Judge's Report and Recommendations to deny Petitioner's first ground for relief as without merit.  The Court **DENIES** Petitioner's first ground.

An appeal from the denial of a habeas corpus action may not proceed unless a circuit justice or judge issues a certificate of appealability.  28 U.S.C. § 2253(c)(1).  To warrant a certificate of appealability, a petitioner must make a substantial showing that he was denied a constitutional right.  28 U.S.C. § 2253(c)(2); *see also Barefoot v. Estelle*, 463 U.S. 880, 893 (1983); *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063, 1073 (6th Cir. 1997).  He need not demonstrate that he will prevail on the merits; he needs only to demonstrate that the issues he seeks to appeal are deserving of further proceedings or are reasonably debatable among jurists of reason.  *Barefoot*, 463 U.S. at 893 n.4. "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy 28 U.S.C. § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This analysis should also be applied when the Court has denied a claim on procedural grounds.  *Id.* at 483; *see also Porterfield v. Bell*, 258 F.3d 484, 486

(6th Cir. 2001). When the Court dismisses a claim on procedural grounds, a certificate of appealability is warranted when petitioner demonstrates: (1) that jurists of reason would find it debatable whether the petition states a valid claim, and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

Because the Court agrees with and adopts the Magistrate Judge's decision to deny Petitioner's first ground for relief as without merit, and because Petitioner did not object to the Magistrate Judge's recommendation, the Court concludes that Petitioner's first ground for relief does not warrant a certificate of appealability.

## B. <u>Grounds Two and Four</u>: Denial of Motions to Suppress Evidence.

In his second and fourth grounds for relief, Petitioner challenges the trial court's denial of his motions to suppress evidence. (Petition, Doc. No. 2, at 15–20, 28–30.) In his second ground for relief, Petitioner argued that the trial court erred in denying his motion to suppress the jacket (and resulting DNA evidence) that police seized from him on January 12, 1989 when he left his jacket on a chair in the police station. Petitioner argued in his fourth ground for relief that his arrest on the traffic warrants was a pretext for police to search for evidence concerning the homicides and that the fruits of that improper search—the bloodstains on Petitioner's jacket and all evidence seized from Petitioner's residence, including money the State used to bolster its aggravated

robbery charge against Petitioner—should have been suppressed. (*Id.* at 28–30.)

The Magistrate Judge recommended that the Court deny Petitioner's claims, primarily as barred by *Stone v. Powell* and alternatively as without merit because the state court dispositions of the claims did not contravene or unreasonably apply clearly established federal law. (ECF No. 67, at PAGEID # 481–87.) Petitioner did not object to the Magistrate Judge's recommendation. Moreover, the Court is not persuaded that any part of the Magistrate Judge's Report and Recommendations concerning Petitioner's second and fourth grounds for relief was "clearly erroneous" or "contrary to law" sufficient to require this Court to modify or set it aside. The Court agrees with and adopts the Magistrate Judge's Report and Recommendations to deny Petitioner's second and fourth grounds for relief as precluded by *Stone v. Powell* and as without merit. The Court **DENIES** Petitioner's second and fourth grounds.

Because the Court agrees with and adopts the Magistrate Judge's decision to deny Petitioner's second and fourth grounds for relief, and because Petitioner did not object to the Magistrate Judge's recommendation, the Court concludes that Petitioner's second and fourth grounds for relief do not warrant a certificate of appealability.

## C. Ground Three: Denial of Motion to Suppress Statements.

In his third ground for relief, Petitioner challenged the trial court's January

2, 1991 entry denying his motions to suppress statements. (Petition, Doc. No. 2, at 21-27.) Petitioner had sought to suppress an oral statement that Petitioner made to Lieutenant Sullivan at Petitioner's residence on January 20, 1989, to wit: "Is David dead?"; a written statement that Petitioner made on January 10, 1989; a taped statement that Petitioner made to Lieutenant Sullivan on January 10, 1989; and a taped statement that Petitioner made to Lieutenant Sullivan on January 12, 1989. With respect to Petitioner's statement, "Is David dead?", Petitioner argued that when police confronted Petitioner at his residence with questions about when Petitioner had last seen Thelma and David Miller, police should have advised Petitioner of his rights. Petitioner reasoned that police already viewed Petitioner as a suspect, that the officers' questions were designed to elicit incriminating information, and that Petitioner's freedom of movement was restrained.

The essence of Petitioner's argument challenging his statements on January 12, 1989 was that his statements were not voluntary under the totality of the circumstances. Petitioner asserted that the trial court's entry denying the motions to suppress found only that Petitioner had been advised of and had waived his rights. Petitioner also argued that despite the trial court's finding to the contrary, the record from the suppression hearings demonstrated that police employed coercive and deceptive practices in obtaining Petitioner's statements.

The Magistrate Judge recommended that the Court deny Petitioner's claim as without merit. (ECF No. 67, at PAGEID #: 488-497.) More precisely, the

Magistrate Judge concluded not only that Petitioner's claim was without merit but that the state appellate court's decision rejecting the claim did not contravene or unreasonably apply clearly established federal law.  The Magistrate Judge began by setting forth the state appellate court's decision considering and rejecting Petitioner's claim as well as the clearly established federal law governing claimed *Miranda* violations and voluntariness of confessions.  Viewing the testimony presented during the hearings on Petitioner's motion to suppress statements against that backdrop, the Magistrate Judge concluded that Petitioner's January 10, 1989 statement, "Is David dead?" was validly admitted into evidence.  The Magistrate Judge explained that Petitioner had essentially volunteered the statement.  The Magistrate Judge also explained that Petitioner was not in custody because he was in his own residence and because his freedom of movement was not impeded.  The Magistrate Judge then noted that Petitioner voluntarily accompanied officers to the police station where he did receive *Miranda* warnings before he made any further statements.

The Magistrate Judge also concluded that Petitioner's January 12, 1989 waiver of his *Miranda* rights, and resulting statements, were not coerced.  The Magistrate Judge explained that the record contained absolutely no evidence that any officers employed coercive tactics to persuade Petitioner to waive his rights or to elicit incriminating statements from Petitioner.

After reaching those conclusions, the Magistrate Judge also determined that the state appellate court gave careful consideration to the record and the clearly established federal law governing Petitioner's claims.  That being so, the Magistrate Judge concluded that Petitioner's claim should be rejected.

Petitioner objects to the Magistrate Judge's conclusions and recommendation.  Petitioner argues that he set forth clear arguments as to each violation of his Constitutional rights and the Magistrate Judge, without citing any authority, simply rehashed and agreed with the state appellate court's decision rejecting Petitioner's claim.  (ECF No. 74, at PAGEID # 639–40.)  Petitioner maintains that the Magistrate Judge failed to take into account the numerous factual contentions that Petitioner made or to correctly apply relevant federal precedent.  The Court disagrees.

The Court finds nothing about the Magistrate Judge's decision that was clearly erroneous or contrary to law.  As noted above, the Magistrate Judge began by setting forth the state appellate court's decision considering and rejecting Petitioner's claim as well as the clearly established federal law governing claimed *Miranda* violations and voluntariness of confessions. Petitioner argues that the Magistrate Judge cited no authority and/or failed to correctly apply relevant precedent.  But Petitioner points to no case or cases that the Magistrate Judge incorrectly considered or incorrectly omitted, and the Court is satisfied from its review of the Report and Recommendations that the

Magistrate Judge identified and applied the correct federal case law governing claimed *Miranda* violations and claimed involuntariness of statements and/or a waiver of rights.

In concluding that Petitioner's January 10, 1989 statement, "Is David dead?" was validly admitted into evidence, the Magistrate Judge did take into account Petitioner's arguments for why admission of that statement violated his rights. The Magistrate Judge rejected Petitioner's argument that he was entitled to a *Miranda* warning, concluding from the Magistrate Judge's own review of the transcript of the suppression hearing that Petitioner had essentially volunteered the statement. The Magistrate Judge also rejected Petitioner's argument that he was somehow in custody by virtue of the fact that the presence of four officers was intimidating and that police already viewed him as a suspect. Specifically, the Magistrate Judge noted that Petitioner was in his own residence, that Petitioner was not impeded in his movement, and that Petitioner voluntarily accompanied officers to the police station where he received *Miranda* warnings before he made any further statements. This Court has reviewed the transcript and agrees with the Magistrate Judge's conclusions.

In concluding that Petitioner's January 12, 1989 waiver of his *Miranda* rights and resulting statements were not coerced, the Magistrate Judge took into account Petitioner's arguments for why admission of those statements violated his rights. The Magistrate Judge rejected Petitioner's myriad arguments that his

statements were involuntary when the Magistrate Judge explained from his own review of the record there was absolutely no evidence that any officers employed coercive tactics to persuade Petitioner to waive his rights or to elicit incriminating statements from Petitioner. With the absence of any evidence of coercion, as the Magistrate Judge explained, factors such as Petitioner's young age, level of education, and low IQ; whether or how many times Petitioner received *Miranda* warnings; and whether police used deception or otherwise misled Petitioner about the evidence against him, were less relevant to the inquiry of whether Petitioner executed his *Miranda* waiver and made resulting statements voluntarily. Again, this Court is in agreement with the Magistrate Judge's conclusions from the record.

Far from rehashing and agreeing with the state appellate court's decision, the Magistrate Judge recounted the decision and then did what 28 U.S.C. § 2254(d)(1) required him to do—namely, examine the decision to determine whether it contravened or unreasonably applied clearly established federal law. In so doing, the Magistrate Judge concluded that the state appellate court had given careful consideration to the record and the clearly established federal law governing Petitioner's claims. The Court agrees.

In sum, the Court overrules Petitioner's objection that the Magistrate Judge cited no authority and/or incorrectly applied relevant authority, that the Magistrate Judge failed to address Petitioner's specific arguments, and that the Magistrate

Judge simply rehashed and agreed with the state appellate court's decision.  The objection does not accurately reflect the Magistrate Judge's June 30, 2011 Report and Recommendations.

For the foregoing reasons, the Court **OVERRULES** Petitioner's objection (ECF No. 74, at PAGEID #: 639–40), **ADOPTS** the Magistrate Judge's Recommendation (ECF No. 67, at PAGEID #: 488–97), and hereby **DENIES** Petitioner's third ground for relief as without merit.

The Court is further of the view that Petitioner's claims do not warrant a certificate of appealability.  First, *Stone v. Powell*, 428 U.S. 465 (1976), looms large over Petitioner's claims.  There, the United States Supreme Court held that a petitioner cannot obtain habeas corpus relief on the denial of a motion to suppress statements if the state provided a corrective process for redressing such claims and the petitioner's efforts to obtain relief were not thwarted by the state's corrective process.  *Stone* erects a nearly insurmountable hurdle to obtaining habeas corpus relief based upon the denial of a motion to suppress statements—a hurdle Petitioner certainly cannot overcome in the instant case. *See, e.g.*, *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000); *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).  Further, although the fact-intensive nature of challenges to the denial of a motion to suppress usually warrants further review on appeal, governing case law is squarely stacked against Petitioner based on the facts surrounding his statements.  Even indulging Petitioner every

benefit of the doubt, there simply is no plausible basis for questioning the validity of his volunteered statement to officers while in his home or the several taped and written statements he subsequently provided to officers after having been advised of and waiving his *Miranda* rights.  For the foregoing reasons, the Court cannot conclude that reasonable jurists could find the decision rejecting Petitioner's claim wrong or even debatable.  Consequently, the Court denies Petitioner a certificate of appealability on Ground Three.

## D. <u>Grounds Five and Twenty-Six</u>:  Invalid Waiver of Right to Jury Trial.

Petitioner argues in his fifth ground for relief that the trial court's colloquy was insufficient to guarantee that his waiver of his right to a jury trial was knowing, intelligent, and voluntary.  (Petition, Doc. No. 2, at 31–33.)  In his twenty-sixth ground for relief, Petitioner argues that his waiver of his right to a jury trial was not knowing, intelligent, and voluntary.  (*Id.* at 106–08.)  The Magistrate Judge addressed these related claims together.

The essence of Petitioner's fifth ground for relief was that the trial court, during its February 19, 1991 colloquy with Petitioner concerning Petitioner's waiver of his right to a jury trial, had omitted critical points concerning ramifications at the penalty phase of proceedings with a three-judge panel instead of a jury.  According to Petitioner, the trial court failed to state that in a trial by jury, any recommendation for the death penalty would have to be unanimous; failed to state that even if the jury returned a death verdict, the trial

court could accept it only if a death sentence was appropriate; and failed to state that judges on a three-judge panel are presumed to have ignored inadmissible evidence, which affects the nature of review that the case would receive on appeal.  Petitioner argued that he could not have knowingly and intelligently waived his right to a jury trial without knowing that it would take a concurrence of only three, rather than twelve, to convict Petitioner of the crimes, to convict Petitioner of the death penalty specifications, and to sentence Petitioner to death. Petitioner continued that he also should have been made aware that he would be sacrificing the two-part jury-and-judge review at the penalty phase, that his opportunity of reversal on appeal would be greatly diminished, and that he could withdraw his waiver any time before the trial started.

In his twenty-sixth ground for relief, Petitioner argued that his waiver was in fact not knowing and intelligent.  Citing the same points set forth above, Petitioner asserts that he waived his right to a jury trial on the advice of his counsel but would not have if he had been aware of the above points.  Petitioner also asserted that he was not aware when he waived his right to jury trial that the State had afforded defense counsel funds for an expert in exchange for the waiver.

The Magistrate Judge recommended that this Court deny Petitioner's claims as without merit and, more precisely, because the state appellate court's decision rejecting the claim did not contravene or unreasonably apply clearly

established federal law.  (ECF No. 67, at PAGEID # 497–506.)  The Magistrate

Judge first recounted verbatim the state appellate court's decision considering

and rejecting Petitioner's allegations.  The Magistrate Judge next set forth the

clearly established federal law governing the fundamental right to a trial by jury

and the requirements for a valid waiver of that right.  Noting the points that the

state appellate court had made, as well as some additional points based on his

review of the record, the Magistrate Judge found no merit to Petitioner's

contentions that the trial court's colloquy was inadequate and that his waiver was

not constitutionally valid.  The Magistrate Judge further found that the state

appellate court's decision did not contravene or unreasonably apply clearly

established federal law.

Petitioner objects to the Magistrate Judge's conclusions and

recommendation.  (ECF No. 74, at PAGEID #: 638–39.)  Essentially reiterating

the arguments that he advanced in his Petition, Petitioner asserts that the trial

court's explanation during the colloquy that the jury's sentencing verdict would

have to be unanimous was not a sufficient explanation of the ramifications at the

penalty phase of proceeding with a three-judge panel as opposed to a jury.

The Court finds nothing about the Magistrate Judge's decision that was

clearly erroneous or contrary to law.  Aside from asserting that the trial court's

statement about the jury's sentencing verdict being unanimous was inadequate to

convey all of the penalty-phase ramifications of Petitioner's waiving his right to a

jury trial, Petitioner points to nothing in the Magistrate Judge's Report and Recommendations that Petitioner finds objectionable. Rather, Petitioner merely sets forth a condensed version of his original arguments. The Court has reviewed the trial court's February 19, 1991 colloquy with Petitioner, as well as the materials that Petitioner offered in support of his allegations. The Court reaches the same conclusion that the Magistrate Judge reached—namely, that the trial court's colloquy was adequate to ensure that Petitioner's waiver of his right to a jury trial was knowing and intelligent and that Petitioner's waiver was in fact knowing and intelligent.

For the foregoing reasons, the Court **OVERRULES** Petitioner's objection (ECF No. 74, at PAGEID # 638–39), **ADOPTS** the Magistrate Judge's Recommendation (ECF No. 67, at PAGEID #: 497–506), and hereby **DENIES** Petitioner's fifth and twenty-sixth grounds for relief as without merit.

Although steadfastly standing by the foregoing, the Court is satisfied that Petitioner's claims warrant a certificate of appealability. Where, as in Ohio, a solitary juror can prevent imposition of a death sentence, any decision to waive a twelve-person jury of lay people in favor of a three-person panel of judges warrants particular scrutiny. While recognizing the valid reasons in the instant case for waiving a jury in favor of a panel—such as the barbaric and gruesome nature of the murders of Thelma Miller and her innocent twelve-year-old son David—this Court is nonetheless of the view that Petitioner's claims are

deserving of further view on appeal. The trial court's colloquy with Petitioner was adequate—albeit not ideal—to ensure that his jury waiver was knowing, intelligent, and voluntary. What the colloquy lacked—namely an explanation that any death verdict had to be unanimous and the fact that a single juror is able to prevent a death sentence (which militates in favor of placing that decision in the hands of twelve people rather than three people)—is significant enough that reasonable jurists could find the denial of Petitioner's claims at least debatable. Accordingly, the Court certifies Petitioner's fifth and twenty-sixth grounds for relief for appeal.

**E. Ground Seven: Admission of irrelevant, misleading, prejudicial evidence.**

In his seventh ground for relief, Petitioner challenged the trial court's admission of numerous pieces of evidence, arguing that they were irrelevant, misleading, cumulative, and/or prejudicial. (Petition, Doc. No. 2, at 37–41.) Petitioner pointed to the following exhibits that were admitted over his defense counsel's objections: Exhibit 31 (couch seat that contained a machete); Exhibits 69, 70, 85, 86, 87, and 88 (photographs of Exhibit 31); Exhibit 40 (garage door piece); Exhibits 44 and 45 (photos of David Neil's shoe); Exhibit 71 (enlargement of footprint found at the scene, which footprint was Exhibit 22); Exhibit 72 (size 10 Converse tennis shoe); Exhibit 80 (student validation ticket); and Exhibits 99–103 (bank envelopes). Petitioner also argued that the following exhibits should not

have been admitted, although defense counsel did not object: Exhibits 9, 10, 11, 12, 13, 22, 23, 24, 25, 26, 27, and 28 (cumulative photos of shoe prints left at the crime scene); Exhibits 81 and 82 (photos of shoes found at Picway with a different sole patterns than shoe prints at the crime scene); and Exhibit 46 (diagram reflecting sole pattern from shoe print at crime scene). The essence of Petitioner's argument at trial and herein was that none of those exhibits identified Petitioner as having made the bloody shoe print(s) found at the scene or as the person who murdered Thelma and David Miller.

The Magistrate Judge recommended that this Court deny Petitioner's claim as without merit and further concluded that the state appellate court's decision rejecting the claim did not contravene or unreasonably apply clearly established federal law. (ECF No. 67, at PAGEID # 506–13.) Petitioner did not object to the Magistrate Judge's recommendation. Moreover, the Court is not persuaded that any part of the Magistrate Judge's Report and Recommendations concerning Petitioner's seventh ground for relief was "clearly erroneous" or "contrary to law" sufficient to require this Court to modify or set it aside. The Court has reviewed the relevant portions of the transcript relating to each piece of evidence and agrees with the Magistrate Judge's conclusions as to which pieces of challenged evidence were relevant and probative. The Court also notes that the standard of review governing habeas review of state evidentiary rulings, which is strict and narrow, is well-established and was correctly set forth by the Magistrate Judge.

The Court agrees with and adopts the Magistrate Judge's Report and Recommendations to deny Petitioner's seventh ground for relief as without merit. The Court **DENIES** Petitioner's seventh ground for relief.

Because the Court agrees with and adopts the Magistrate Judge's decision to deny Petitioner's seventh ground for relief and because Petitioner did not object to the Magistrate Judge's recommendation, the Court concludes that Petitioner's seventh ground for relief does not warrant a certificate of appealability.

**F.  Ground Eight:  Improper Admission of "Other Acts" Evidence.**

In his eighth ground for relief, Petitioner challenged the trial court's admission of "other acts" and "bad character" evidence.  (Petition, Doc. No. 2, at 42–48.)  Petitioner asserted that, "[w]here evidence of other acts fails to show by substantial proof that because of a unique identifiable plan of criminal activity there is a strong likelihood that the person who committed the other acts also committed the acts charged, the admission of the other acts evidence is in violation of the rights guaranteed by the Fifth, Sixth, Eighth and Fourteenth [A]mendments to the United States Constitution."  (*Id*. at 42.)  Petitioner proceeded to set forth how the prosecution, through its opening and closing statements as well as witness testimony, "relentlessly emphasized other acts of misconduct and uncharged crimes as well as character evidence of Mr. Kinley's propensity for violence."  (*Id*.)

The Magistrate Judge recommended that this Court deny Petitioner's claim as without merit.  (ECF No. 67, at PAGEID # 514-521.)  The Magistrate Judge began by repeating the portion of the state appellate court's decision rejecting Petitioner's claim and proceeded to recount the witness testimony and prosecution opening statements that, according to Petitioner, constituted inadmissible "other bad acts" evidence.  Reasoning that all of the evidence at issue spoke to the relationship between Petitioner and victim Thelma Miller, the Magistrate Judge concluded that its admission was not erroneous and certainly was not so egregious as to deprive Petitioner of a fundamentally fair trial.  The Magistrate Judge explained that the evidence showed that Petitioner had threatened to kill Ms. Miller if he ever caught her with someone else and that, two days before the murders, Petitioner had found Ms. Miller with Ronald Hildebrand and again threatened to kill her.  The Magistrate Judge concluded that "[t]he evidence at issue goes to the state's 'prior calculation and design' burden."  (*Id.* at PAGEID # 520.)  The Magistrate Judge went on to conclude that even assuming the evidence was inadmissible, Petitioner would not be entitled to relief because he elected to try his case to a three-judge panel, rather than a jury, and judges are presumed to ignore inadmissible evidence.  The Magistrate Judge thus determined that the state appellate court's decision rejecting Petitioner's claim did not contravene or unreasonably apply clearly established federal law.

Petitioner objects to the Magistrate Judge's findings and conclusions. (ECF No. 75, at PAGEID # 663.)  Incorporating by reference the arguments he set forth in his Petition and Merit Brief, Petitioner asserts in his objections "that the R&R failed to understand and consider the number of irrelevant and prejudicial 'other acts' evidence that was introduced against him." (*Id.*)  Petitioner also notes that the improper evidence was weighed not only during the culpability phase but also during the penalty phase.  In his Merit Brief (ECF No. 54, at PAGEID #: 318–25), Petitioner had argued that the references to his threats against Ms. Miller and to incidents of his violent acts against Ms. Miller were excessive, highly inflammatory, and unduly prejudicial.  He asserted that because the state lacked physical evidence connecting him to the crime, the state introduced "other acts" evidence solely for the improper purpose of demonstrating Petitioner's propensity to commit a violent act toward Ms. Miller.

The Court is not persuaded that any part of the Magistrate Judge's Report and Recommendations concerning Petitioner's eighth ground for relief was "clearly erroneous" or "contrary to law" sufficient to require this Court to modify or set it aside.  The Court finds Petitioner's objection unpersuasive and overrules it. Petitioner's assertion that the Magistrate Judge's Report and Recommendations "failed to understand and consider the number of irrelevant and prejudicial 'other acts' evidence" is belied by the very Report and Recommendations Petitioner assails.  There, the Magistrate Judge listed every piece of "other acts" evidence

that Petitioner himself laid out in his Merit Brief.  The Magistrate Judge

recognized the standard for admission of such evidence and concluded that the

admission was warranted for the state to satisfy its "prior calculation and design"

burden of proof.  The Magistrate Judge also observed that any argument by

Petitioner that he was prejudiced by the admission of improper evidence is

undermined by the fact that he was tried before a three-judge panel.  Judges are

presumed to consider only admissible evidence.  The Court also takes note of the

careful consideration the state appellate court paid to the controlling law and

Petitioner's arguments.  The Court agrees with the Magistrate Judge that

admission of the other acts evidence in question was not so egregious as to deny

fundamental fairness and that the state appellate court's decision rejecting

Petitioner's claim did not contravene or unreasonably apply clearly established

federal law.

For the foregoing reasons, the Court **OVERRULES** Petitioner's objection

(ECF No. 75, at PAGEID # 663), **ADOPTS** the Magistrate Judge's

Recommendation (ECF No. 67, at PAGEID # 514–21), and hereby **DENIES**

Petitioner's eighth ground for relief as without merit.

The Court further concludes that Petitioner's claim does not warrant a

certificate of appealability.  Although the "other acts" evidence introduced in this

case was damaging in nature and fairly extensive, militating against any

determination that the issue deserves further review on appeal is the inescapable

fact that Petitioner was tried before a three-judge panel, not a jury, and judges are presumed to know the difference between admissible and inadmissible evidence and to ignore the latter.  That fact makes implausible a conclusion that reasonable jurists could find the denial of Petitioner's claim debatable or wrong.

## G. Ground Nine:  Improper Elicitation of Victim Impact Evidence.

Petitioner argues in his ninth ground for relief that the prosecution improperly elicited victim impact evidence in violation of Petitioner's rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments.  (Petition, Doc. No. 2, at 49–50.)  Petitioner asserts that the state introduced evidence of the character of Thelma Miller through the testimony of state witness Darlene McKeachie.  Ms. McKeachie's testimony included remarks that Thelma Miller was "a real nice person" and was "really mild . . .  easy to talk to."  (*Id.* at 49. (quoting Transcript, at 52).  Ms. McKeachie also provided evidence of Thelma Miller's character, according to Petitioner, when Ms. McKeachie testified about Thelma Miller's reaction to an incident during which Petitioner struck her.  Such testimony, Petitioner reasons, produces in the trier of fact an improper desire to convict the accused not based on the evidence but on the basis of sympathy for the victim.

The Magistrate Judge recommended that this Court deny Petitioner's claim as without merit, noting that Petitioner failed to identify with any specificity which of his rights the state violated in presenting Ms. McKeachie's testimony or to

identify any controlling federal law supporting relief on this claim. (ECF No. 67, at PAGEID # 521–22.) Petitioner did not object to the Magistrate Judge's findings and conclusions. Moreover, the Court is not persuaded that any part of the Magistrate Judge's Report and Recommendations concerning Petitioner's ninth ground for relief was "clearly erroneous" or "contrary to law" sufficient to require this Court to modify or set it aside. The Court agrees with and adopts the Magistrate Judge's Report and Recommendations to deny Petitioner's ninth ground for relief as without merit. The Court **DENIES** Petitioner's ninth ground.

Because the Court agrees with and adopts the Magistrate Judge's decision to deny Petitioner's ninth ground for relief and because Petitioner did not object to the Magistrate Judge's recommendation, the Court concludes that Petitioner's ninth ground for relief does not warrant a certificate of appealability.

## H. Ground Ten: Testimony of Forensic Criminalist Timothy C. Shepherd.

In his tenth ground for relief, Petitioner takes issue with two aspects of the testimony of the state's forensic criminalist, Timothy C. Shepherd. (Petition, Doc. No. 2, at 51–54.) First, Petitioner objects to Shepherd's testimony that reddish stains found inside the car driven by Petitioner on the day of the murders and reddish stains found on the machete were blood. Petitioner argues that testimony was irrelevant and highly prejudicial because there was no connection between that blood and the crimes, because the source of the blood was never determined, because Shepherd could not say how long the blood had been in the

car or on the machete, and because Shepherd could not say whether the blood was human.  Petitioner reasons that testimony about that blood, along with extremely bloody photographs, served to inflame the trier of fact.

Petitioner also challenges three occasions when, according to Petitioner, the prosecution used Shepherd's report to improperly "refresh" Shepherd's memory.  The first instance highlighted by Petitioner occurred when Shepherd initially testified on direct that there had been an insufficient amount of blood in the car to test to determine whether the blood was human.  When the prosecution next asked Shepherd whether he had prepared a report, Shepherd corrected himself and answered that the blood was in fact determined to be human. Petitioner complains that the refreshing was improper because Shepherd never stated that he needed his memory refreshed, because Shepherd never testified that the report had actually refreshed his memory, and because the prosecution ultimately withdrew Shepherd's report from the evidence.  Petitioner essentially complains that Shepherd merely read his report into the record, rather than examining it and then testifying from his own memory.  Petitioner emphasizes that the error was more than a technicality, insofar as Shepherd's testimony established that blood found in the car Petitioner had been driving was human, that the stain found on Petitioner's coat was blood, and that possibly the substance found on the machete was blood.

The Magistrate Judge recommended that this Court deny Petitioner's tenth

ground for relief, noting Petitioner's failure to respond to Respondent's arguments

or cite any federal law supporting his claim and the fact that the claim was

arguably subject to procedural default.  (ECF No. 67, at PAGEID # 522–27.)

Petitioner did not object to the Magistrate Judge's findings and conclusions.

Moreover, the Court is not persuaded that any part of the Magistrate Judge's

Report and Recommendations concerning Petitioner's tenth ground for relief was

"clearly erroneous" or "contrary to law" sufficient to require this Court to modify or

set it aside.  The Court agrees with and adopts the Magistrate Judge's Report

and Recommendations to deny Petitioner's tenth ground for relief as without

merit.  The Court **DENIES** Petitioner's tenth ground.

Because the Court agrees with and adopts the Magistrate Judge's decision

to deny Petitioner's tenth ground for relief and because Petitioner did not object to

the Magistrate Judge's recommendation, the Court concludes that Petitioner's

tenth ground for relief does not warrant a certificate of appealability.

## I. Ground Eleven:  Failure to Timely Disclose State's Witness Victor Bishop.

Petitioner argues in his eleventh ground for relief that the State failed to

timely disclose the full nature of Victor Bishop's likely testimony.  (Petition, Doc.

No. 2, at 55–57.)  When Petitioner's defense counsel objected and moved

pursuant to Ohio R. Crim. P. 16(E)(3) for a continuance to prepare for their cross-

examination of Bishop, the trial court denied defense counsel's motion.

Petitioner explains that when the state initially disclosed Bishop as a witness in October 1989, Bishop was to be one of three witnesses who would substantiate that Petitioner was not with those witnesses between 10:30 a.m. and 12:00 noon on the day of the murders. Defense counsel interviewed Bishop about that matter.

Petitioner asserts that Bishop's testimony at trial was far more extensive than had been previously disclosed to defense counsel, including providing information about having seen Petitioner after noon on the day of the murders with money in a bank envelope and a different set of keys than Petitioner normally had—neither of which Bishop observed Petitioner possessing when Bishop saw Petitioner in the morning.

Petitioner faults the state for untimely disclosing the expanded nature of Bishop's testimony and the trial court for denying defense counsel's request for a continuance to investigate and interview Bishop again. Petitioner reasons that defense counsel were left unable to investigate and attack Bishop's credibility about issues that were crucial to the state establishing theft and felony murder.

The Magistrate Judge recommended that this Court deny the instant claim. (ECF No. 67, at PAGEID # 527–34.) Petitioner did not object to the Magistrate Judge's findings and conclusions. Moreover, the Court is not persuaded that any part of the Magistrate Judge's Report and Recommendations concerning

Petitioner's eleventh ground for relief was "clearly erroneous" or "contrary to law" sufficient to require this Court to modify or set it aside. The Court agrees with and adopts the Magistrate Judge's Report and Recommendations to deny Petitioner's eleventh ground for relief as without merit. The Court **DENIES** Petitioner's eleventh ground.

Because the Court agrees with and adopts the Magistrate Judge's decision to deny Petitioner's eleventh ground for relief and because Petitioner did not object to the Magistrate Judge's recommendation, the Court concludes that Petitioner's eleventh ground for relief does not warrant a certificate of appealability.

## J. Ground Twelve: Prosecutorial Misconduct.

In his twelfth ground for relief, Petitioner raises a litany of allegations of prosecutorial misconduct during both phases of his trial. (Petition, Doc. No. 2, at 58–67.) "The prosecutor used inflammatory acts and rhetoric," Petitioner asserts, and in so doing, "injected such a level of emotionalism into the proceedings as to impede a rational analysis of the evidence, thus destroying the fairness that any trial, and certainly a capital case, must have." (*Id.* at 58.)

Petitioner begins by taking the prosecutor to task for several comments made during the culpability-phase closing argument. Petitioner complains that the prosecutor improperly emphasized "other acts" evidence, replayed a portion of Daniel Miller's 9-1-1 taped phone call to police while emphasizing the fear in

Daniel's voice, suggested that Petitioner had easy access to the alleged murder weapon in the event he wanted to re-live the crimes, and emphasized the horrible nature of the victims' deaths.

Petitioner proceeds to assail numerous comments the prosecutor made during penalty-phase closing arguments.  First, Petitioner asserts at length that the prosecutor repeatedly and improperly emphasized inadmissible victim-impact evidence, such as suggesting that Thelma Miller wanted to live in peace and free from Petitioner.  Petitioner also asserts that the prosecutor repeatedly urged the trier of fact to consider non-statutory aggravating circumstances, such as the savagery of the murders and the fact that David Miller was just twelve-years-old, when there was just one charged statutory aggravating circumstance—the killing of two people during the same course of conduct.  To this point, Petitioner also asserts that the prosecutor misstated the standard of proof, remarking that mitigation had to outweigh aggravation in order to warrant a sentence less than death, and otherwise improperly denigrated the mitigation evidence that Petitioner offered in an effort to thwart Petitioner's receiving the individualized sentencing determination that is the bedrock of capital sentencing.  Finally, Petitioner also asserts that the prosecutor expressed his personal opinion about whether Petitioner had established that the aggravating circumstance did not outweigh Petitioner's mitigation evidence.

The Magistrate Judge gave careful consideration to each of Petitioner's arguments and recommended that this Court deny Petitioner's claim in its entirety, partially as procedurally defaulted but primarily as without merit.  (ECF No. 67, at PAGEID #: 534–46.)  The Magistrate Judge began by listing each of the portions of the prosecution's culpability-phase and penalty-phase arguments about which Petitioner complained.  After noting Respondent's arguments in opposition and Petitioner's failure to respond to them, the Magistrate Judge proceeded to repeat the state appellate court's decision rejecting Petitioner's claim.  The Magistrate Judge then set forth the case law governing claims of prosecutorial misconduct in habeas corpus.

Before addressing the bulk of Petitioner's claimed violations, the Magistrate Judge explained why two of Petitioner's arguments were barred by procedural default, even while acknowledging that Respondent had not asserted the defense of procedural default.  Specifically, the Magistrate Judge noted that the Court would decline to review two of Petitioner's arguments that the state appellate court had also declined to review—Petitioner's arguments challenging the prosecutor's emphasis of Lisa Lynn's "other acts" testimony and Petitioner's arguments challenging the prosecutor's discussion of the proximity of the murder weapon to Petitioner's residence—for the reason that Petitioner's defense counsel had not objected to those remarks in violation of Ohio's well-established contemporaneous objection rule.  The Magistrate Judge went on to clarify that

even assuming Petitioner could demonstrate cause for the default of those two arguments, he could not establish prejudice.

To that point, the Magistrate Judge noted that prosecutors can argue the record, highlight inconsistencies or inadequacies in the accused's defense, and forcefully assert reasonable inferences from the evidence. Prosecutors are also entitled, the Magistrate Judge continued, to rely on the trial court's evidentiary rulings and to remark on evidence admitted at trial. The Magistrate Judge also reminded that Petitioner was tried before a three-judge panel and that judges are presumed to ignore inadmissible evidence. Applying those principles to the two arguments that appeared to be procedurally defaulted, the Magistrate Judge explained why Petitioner could not demonstrate prejudice from the two alleged instances of misconduct. As to Lisa Lynn's "other acts" testimony, the Magistrate Judge reminded that because the trial court had ruled over defense counsel's objection that her testimony was admissible, it was not improper for the prosecutor to comment about the testimony. Petitioner thus suffered no prejudice by the prosecutor's argument. With respect to the prosecutor's argument that the proximity of the alleged murder weapon to Petitioner's residence provided him access to the weapon if he wanted to re-live the crimes, the Magistrate Judge concluded that even though the argument was arguably improper, Petitioner could not demonstrate prejudice because if judges are presumed to ignore inadmissible evidence, it is also reasonable to presume they ignore improper

arguments.  Absent evidence to negate that presumption, Petitioner could not

demonstrate prejudice from the prosecutor's questionable argument.

The Magistrate Judge proceeded to address the merits of the remainder of

complained-of instances of prosecutorial misconduct.  Concerning the

prosecutor's replaying part of the tape of Daniel Miller's 9-1-1 call reporting an

ongoing fight between Petitioner and Thelma Miller, the Magistrate Judge

concluded that it was not improper for the prosecutor to highlight a short portion

of a tape that had been admitted into evidence.  The Magistrate Judge also

concluded that it was not improper for the prosecutor to comment about the

horrible nature of the victims' deaths, reasoning that the prosecution was merely

arguing evidence that had been admitted at trial and that prosecutors are

permitted to comment on the nature and circumstances of a murder where Ohio

law allows the trial court to consider the nature and circumstances as reasons

supporting its conclusion that the aggravation outweighed the mitigation beyond a

reasonable doubt.  Citing several decisions, including *Baze v. Rees*, 553 U.S. 35,

38 (2008), the Magistrate Judge determined that the prosecutor did not commit

misconduct in referencing the personal characteristics of the victims, which

Petitioner characterized as improper victim-impact evidence.

With respect to Petitioner's argument that the prosecutor misstated the

standard of proof and discouraged the trier of fact from giving consideration to the

particular character and background evidence that Petitioner had offered in

mitigation, the Magistrate Judge noted that the prosecutor's entire closing argument consisted of seven pages and that the complained-of portion at issue consisted of just eight lines. The Magistrate Judge concluded that even assuming the isolated remarks were improper, they were not so egregious as to result in a fundamentally unfair sentencing process. Moreover, the Magistrate Judge observed, the three-judge panel's sentencing verdicts reflected the judges' use of the correct burden of proof. As for Petitioner's complaint that the prosecutor discouraged individualized sentencing consideration by comparing Petitioner to countless other people from deprived backgrounds, the Magistrate Judge again concluded that even assuming the remarks were improper, they were not so egregious as to render the sentencing process fundamentally unfair. The Magistrate Judge reasoned that the trial court in its sentencing decision referred to the specific mitigation evidence that Petitioner had presented.

Finally, the Magistrate Judge rejected Petitioner's argument that the prosecutor committed misconduct in expressing his personal opinion about Petitioner's mitigation evidence. The Magistrate Judge noted that the prosecutor had not expressed a personal belief about the credibility of witnesses, about Petitioner's guilt, or about the appropriateness of a death sentence. Nor did the prosecutor offer a character assault against Petitioner. Rather, according to the Magistrate Judge, the prosecutor merely commented on the quality of Petitioner's mitigation evidence, which is not improper.

The Magistrate Judge concluded by noting that upon consideration of Petitioner's claims in toto within the context of the entire trial, the Magistrate Judge determined that anything erroneous in the prosecutor's conduct was not so egregious as to result in a fundamentally unfair sentencing process.  In so concluding, the Magistrate Judge reiterated that Petitioner had been tried by a three-judge panel and that judges are presumed to disregard inadmissible evidence and improper arguments.

Petitioner objects to the Magistrate Judge's findings and conclusions. (ECF No. 74, at PAGEID # 640–42.)  Reiterating the instances of alleged misconduct, arguments, and all relevant case law that he had raised in his Petition and Merit Brief, Petitioner asserted that the numerous improper remarks by the prosecutor during both phases of his trial prejudiced Petitioner and misled the jury.  Petitioner insists that the remarks were not isolated, but rather, were extensive, deliberate attacks on Petitioner's character and an attempt to seek a passionate response from the trier of fact and a verdict based on that passion rather than the law and facts.  According to Petitioner, the Magistrate Judge's Report and Recommendations gave short shrift to Petitioner's allegations and failed to take into account the nature of the murders and the likelihood that the prosecutor's inflammatory remarks would impact the trier of fact.

The Court finds nothing about the Magistrate Judge's decision that was clearly erroneous or contrary to law.  It is well settled that "[t]o grant habeas relief

based on prosecutorial misconduct that does not violate a specific guarantee under the Bill of Rights, the misconduct must be so egregious as to deny the Petitioner due process." *Lorraine v. Coyle*, 291 F.3d 416, 439 (6th Cir. 2002) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643–45 (1974)). Thus, a reviewing court must first determine whether prosecutorial misconduct occurred and, if so, whether the misconduct was prejudicial. In so doing, the reviewing court should consider the challenged remarks within the context of the entire trial to determine whether any improper remarks were prejudicial. *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008). In the Sixth Circuit, if a court finds that the challenged conduct was improper, the court must determine whether the misconduct was so flagrant as to deny the Petitioner a fundamentally fair trial. *See, e.g.*, *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006). A court makes that determination by considering the following four factors:

> (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant.

*Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005) (citations omitted).

It bears reminding, with respect to prosecutorial misconduct claims, that the "[p]etitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000.) Thus, even misconduct that was improper or universally condemned does not warrant habeas corpus relief unless

the misconduct was so flagrant and egregious as to deny the petitioner a fundamentally fair trial. *Donnelly*, 416 U.S. at 643–54. To that point, "[t]he relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction (or death sentence) a denial of due process." *Darden v. Wainwright* 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted). Although it is well settled that prosecutors cannot offer personal opinions as to the credibility of witnesses, the guilt of the accused, or facts not in evidence, prosecutors do enjoy wide latitude to "argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Cristini*, 526 F.3d at 901.

Inescapably relevant to evaluating Petitioner's claim is this well-settled principal: "In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." *Harris v. Rivera*, 454 U.S. 339, 346 (1981) (*per curiam*); *see also Smith v. Mitchell*, 348 F.3d 177, 206 (6th Cir. 2003) (holding that because the prosecutor's argument was made to a three-judge panel, any inflammatory effect was "de minimus"); *Wickline v. Mitchell*, 319 F.3d 813, 823-24 (6th Cir. 2003) (holding that the three-judge panel would not likely have been misled by any improper evidence.)

Petitioner begins his objections by reiterating (and essentially incorporating by reference) each instance of prosecutorial misconduct that he alleged in his Petition and Merit Brief. The Court takes notice of each.

During the culpability-phase closing arguments:

1. The prosecutor referred to testimony by Lisa Lynn. Ms. Lynn testified about an incident during which she heard Petitioner threaten and assault Thelma Miller, heard falls and objects breaking and screams, and heard a threat directed at her personally. Petitioner challenges the admissibility of this "other acts evidence," including specifically any threat made against Lisa Lynn, as well as the prosecutor's reference to the "other acts" evidence. (Petition, Doc. No. 2, at 58, ¶¶ 3–4.)

2. The prosecutor also replayed a portion of the tape of a 9-1-1 call that Daniel Miller made pleading for police to help his mother as she and Petitioner were fighting. Petitioner challenges not only the replaying of the tape but also the prosecutor's urging the trier of fact to note the fear in Daniel's voice that his mother was going to be hurt. (*Id.* at 58–59, ¶¶ 5–7.)

3. The prosecutor discussed the location where a machete, the purported murder weapon, was found. Noting the proximity of the weapon to Petitioner's residence, the prosecutor opined that the location afforded Petitioner access to the weapon "where he could relive what he had done." Petitioner argues that the argument portrayed him as a ghoul, constituted an illegitimate technique of proving conduct through character, and was unsupported by any evidence at trial. (*Id.* at 59, ¶¶ 8–9.)

4. The prosecutor described the horror of the victims' deaths, emphasizing the photographs, the amount of blood, and even some dismemberment. Petitioner argues that the remarks were not relevant to the determination of who committed the murders and served only to inflame the trier of fact. (*Id.* at 59–60, ¶¶ 10–11.)

During the penalty-phase closing arguments:

5. The prosecutor used inflammatory rhetoric to emphasize inadmissible victim impact evidence and non-statutory aggravating circumstances. According to Petitioner, the prosecutor argued that Thelma Miller did not want to die and wanted to live free from Petitioner. The prosecutor also asserted that twelve-year-old David Miller certainly did not want to die and was a truly innocent victim. The

prosecutor highlighted the machete, repeatedly referenced the savagery of the murders, and suggested that Petitioner carried them out to satisfy his feelings of anger, jealousy, and revenge. Petitioner emphasizes that he was charged with just one aggravating circumstance: the killing of two people during the same course of conduct. (*Id*. at 60–63, ¶¶ 13–21.)

6. The prosecutor misstated the standard of proof, remarking that the mitigation had to outweigh the aggravation in order to warrant a sentence less than death. (*Id*. at 63–64, ¶ 22.)

7. The prosecutor offered a personal belief that Petitioner could offer no evidence that would mitigate in favor of a sentence less than death. (*Id*. at 64, ¶¶ 23–24, 31.)

8. The prosecutor encouraged the sentencers to analyze Petitioner's mitigation evidence by comparing him to unspecified other persons who also endured deprived backgrounds, thereby discouraging the sentencers from giving Petitioner individualized sentencing consideration. Such arguments are not only irrelevant and unsupported by the record but also impossible to rebut. (*Id*. at 64– 65, ¶¶ 25-30.)

Petitioner asserts in his objections that the prosecutor's numerous improper remarks prejudiced Petitioner and misled the jury. The Court rejects that assertion in view of the glaring fact that Petitioner received a bench trial, not a jury trial. Petitioner also asserts that the prosecutor's improper remarks were not isolated, but rather, were extensive and deliberate and intended to incite passion in order to obtain a verdict based on passion. The Court rejects that assertion, too. The prosecutor's summations were not extensive, considering the trial as a whole, and inflammatory remarks hardly dominated those summations. Further, the Court hastens to emphasize yet again that Petitioner was tried before a panel of three judges, not a jury of lay people.

Petitioner proceeds to assert in his objections that the Report and Recommendations gave short shrift to his allegations and failed to take into consideration the likelihood that the improper remarks would impact the trier of fact. The Court disagrees. The Magistrate Judge began his Report and Recommendations by listing each of Petitioner's allegations one by one. The Magistrate Judge subsequently proceeded to consider each of those allegations one by one. Moreover, it is evident that the Magistrate Judge took into consideration the likelihood that any improper arguments would impact the trier of fact. The Magistrate Judge correctly relied on the principle that any possible impact that improper remarks might have had on the trier of fact was diminished (if not negated) by the fact that Petitioner was tried before a three-judge panel rather than a jury. Thus, the Magistrate Judge gave the issue of potential impact its proper due.

Petitioner summarily asserts that the Magistrate Judge erred in concluding that the prosecutor's remarks were not so prejudicial as to render Petitioner's trial fundamentally unfair. The Court rejects Petitioner's assertion. The Court has considered each instance of alleged misconduct and need not recount them one by one again. The Court has reviewed the prosecutor's closing arguments during the culpability phase and the penalty phase. The Court has considered each alleged instance of improper argument individually and cumulatively, both within the context of the summations, as well as within the broader context of the trial in

its entirety. The Court agrees with the Magistrate Judge that no prosecutorial remarks were so egregious as to deprive Petitioner of a fundamentally fair trial. The fact that Petitioner was tried before a panel of three judges, not a jury of lay persons, bears considerably on that determination. The Court also agrees with the Magistrate Judge that the state court's decision rejecting Petitioner's claim did not contravene or unreasonably apply clearly established federal law.

For the foregoing reasons, the Court **OVERRULES** Petitioner's objection (ECF No. 74, at PAGEID #: 640–42), **ADOPTS** the Magistrate Judge's Recommendation (ECF No. 67, at PAGEID #: 534–46), and hereby **DENIES** Petitioner's twelfth ground for relief.

Further, the Court cannot find that Petitioner's claim warrants a certificate of appealability. First, the burden of establishing a meritorious prosecutorial misconduct claim is difficult to meet as it is—demonstrating that the prosecutor's conduct was so flagrant as to render the entire trial fundamentally unfair. *See, e.g., Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003). Moreover, as the Sixth Circuit observed in *Rodriguez v. Jones*, 478 F. App'x 271, 275 (6th Cir. 2012), "[t]he deferential standard of AEDPA makes the burden on the petitioner even greater since 'the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.'" (quoting *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2000)). Add to the foregoing the pervading fact that Petitioner herein was tried before a

three-judge panel rather than a jury, and this Court cannot plausibly conclude that reasonable jurists could find debatable or wrong the decision denying Petitioner's prosecutorial misconduct claim. Petitioner's twelfth claim for relief is not deserving of further review on appeal.

## K. Ground Thirteen: Ineffective Assistance of Counsel.

In his thirteenth ground for relief, Petitioner raises numerous instances of alleged ineffective assistance of counsel. (Petition, Doc. No. 2, at 68–69.) Petitioner set forth a list of issues that, according to Petitioner, show that his defense attorneys were ineffective in the following instances:

1. Failure to litigate at a pretrial hearing the reliability and admissibility of the DNA evidence.

2. Failure to object to the admission of the money found in Mr. Kinley's house, State's Exhibit 79, as being the fruit of an illegal pretextual arrest.

3. Failure to insure a proper jury waiver colloquy with the trial court.

4. Failure to object to the victim impact testimony at Tr. 48–56 (excepting the witness's testimony, at Tr. 53–54, that Thelma Miller said now Mr. Kinley was in trouble, because now she had witnesses to his striking her; and the witness's testimony, at Tr. 56, that Thelma Miller wanted to see her children, both of which statements *were* objected to).

5. Failure to object to Forensic Criminalist Shepherd's testimony on irrelevant, unfairly prejudicial matters and failure to object to the improper "refreshing" of Mr. Shepherd's memory.

6. Failure to object to the admission of the following inflammatory and gruesome photos: State's Exhibits 11, 29, and 30.

7. Failure to object to prosecutorial misconduct at Tr. 1428–29, 1441;
Mit. Tr. 169–74.

(Petition, Doc. No. 2, at 68–69.)

The Magistrate Judge recommended that the Court deny Petitioner's claim

as without merit. (ECF No. 67, at 546–51.) The Magistrate Judge began by

noting that although Petitioner identified seven manners in which his counsel

performed deficiently, Petitioner failed to explain how he was prejudiced by any of

those beyond making a summary declaration that he was prejudiced. After

recounting the state appellate court's decision rejecting Petitioner's claim, the

Magistrate Judge explained that even assuming counsel's performance was

constitutionally deficient, Petitioner was unable to demonstrate that he was

prejudiced by any of those alleged deficiencies. The Magistrate Judge

proceeded to note how its findings and conclusions rejecting grounds one

(admissibility of DNA evidence), grounds two and four (improper search and pre-

textual arrest), ground five (validity of jury waiver), ground nine (eliciting of victim

impact testimony), and ground ten (admissibility of testimony by criminalist Tim

Shepherd) foreclosed any finding that Petitioner was prejudiced from counsel's

alleged deficiencies in those regards. The Magistrate Judge then concluded that

Petitioner had not demonstrated deficient performance, much less prejudice,

stemming from counsel's failure to object to three crime scene photos or

counsel's failure to object to alleged instances of prosecutorial misconduct. The

Magistrate Judge accordingly determined that Petitioner's claim had no merit and should be rejected.

Petitioner objects to the Magistrate Judge's findings and conclusions. (ECF No. 74, at PAGEID #: 659–60.)  The gist of Petitioner's objection, near as the Court can discern, is that the Magistrate Judge clearly set forth each of Petitioner's allegations, as well as the correct authority governing review in habeas corpus of claims of ineffective assistance of counsel, but then incorrectly determined that counsel's deficiencies did not prejudice Petitioner's right to a fair trial.

The Court finds nothing about the Magistrate Judge's decision that was clearly erroneous  or contrary to law.  Essentially, Petitioner left this Court with no more explanation of *how* his attorneys performed deficiently or *how* he was prejudiced by counsel's alleged deficiencies than he had left the Magistrate Judge.  That is wholly insufficient to establish ineffective assistance of counsel. To establish ineffective assistance of counsel, a petitioner must demonstrate that (1) counsel's performance was objectively deficient, and (2) the deficient performance prejudiced the petitioner's defense.  *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  In *Beuke v. Houk*, 537 F.3d 618, 642 (6th 2008), the Sixth Circuit explained the first part of *Strickland* as follows:

> We begin by considering the deficiency element.  "[T]he proper standard for attorney performance is that of reasonably effective assistance" under "prevailing professional norms," and thus to establish

> deficient performance, the habeas petitioner must show that "counsel's performance fell below an objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. 2052.  When engaging in this inquiry, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052.

*Id.*  To satisfy *Strickland*'s prejudice component, a petitioner "must show that

there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Strickland*, 466

U.S. at 694.  Recently, in *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012),

the Sixth Circuit explained the inherent difficulty in establishing ineffective

assistance of counsel:

> The Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA; it requires the petitioner not only to demonstrate the merit of his underlying *Strickland* claim, but also to demonstrate that "there is no possibility fairminded jurists could disagree that the state court's decision [rejecting the *Strickland* claim] conflicts with this Court's precedents." *Richter*, 131 S.Ct. at 786 (noting that this was "meant to be" a difficult standard to meet).

What should be taken away from the foregoing, at a minimum, is that neither the

deficient performance nor the prejudice component of *Strickland* can ever be self-

evident; each must be proven.  Nowhere in his Petition, Merit Brief, or Corrected

Objections did Petitioner do anything more than *state* seven ways in which his

defense attorneys performed deficiently and *state* that he was prejudiced by

those deficiencies.  That is, nowhere did Petitioner even attempt to demonstrate

*why*, for instance, his defense counsel's failure to challenge in a pretrial hearing the admissibility of the DNA evidence or to object to alleged instances of prosecutorial misconduct fell below an objective standard of reasonableness and outside the wide range of reasonable professional assistance. Similarly, nowhere did Petitioner attempt to demonstrate *why* even one of his counsel's alleged deficiencies was so prejudicial that without it, there is a reasonable probability that Petitioner would not have been convicted or would have received a sentence less than death. That is wholly insufficient to establish ineffective assistance of counsel, much less establish that the state appellate court's decision rejecting Petitioner's claim contravened or unreasonably applied clearly established federal law.

Having reviewed the Petition, Petitioner's Merit Brief, and Petitioner's Corrected Objections, this Court agrees with and adopts the Magistrate Judge's Report and Recommendations, overrules Petitioner's objection, and denies Petitioner's claim as without merit.

For the foregoing reasons, Petitioner's thirteenth ground for relief does not warrant a certificate of appealability.

## L. **Ground Fourteen:** **Insufficient Evidence.**

Petitioner argues in his fourteenth ground for relief that his convictions are not supported by sufficient evidence in violation of his right to due process guaranteed by the Fourteenth Amendment. (Petition, Doc. No. 2, at 70–73.)

Specifically, Petitioner argues that the evidence was insufficient to prove beyond a reasonable doubt the elements of the offense of aggravated robbery, both as a free-standing offense and as the predicate to the two felony-murder capital offenses of which Petitioner was convicted.

The Magistrate Judge recommended that this Court deny Petitioner's claim as without merit and because the state court's decision rejecting the claim did not contravene or unreasonably apply federal law. (ECF No. 67, at PAGEID # 552–560.)  Petitioner did not object to the Magistrate Judge's findings and conclusions and the time for doing so has expired.  Moreover, the Court is not persuaded that any part of the Magistrate Judge's Report and Recommendations concerning Petitioner's first ground for relief was "clearly erroneous" or "contrary to law" sufficient to require this Court to modify or set it aside.  Having reviewed the Petition and Merit Brief, as well as Respondent's Return of Writ, this Court adopts the Report and Recommendations (ECF No. 67, at PAGEID # 552–60).

The Court accordingly **DENIES** Petitioner's fourteenth ground for relief. Because the Court agrees with and adopts the Magistrate Judge's decision to deny Petitioner's fourteenth ground for relief and because Petitioner did not object to the Magistrate Judge's recommendation, the Court concludes that Petitioner's fourteenth ground for relief does not warrant a certificate of appealability.

**M.  Ground Fifteen:  Improperly Coerced Waiver of Right to Jury Trial.**

In his fifteenth ground for relief, Petitioner argues that his "constitutional

right to a trial by jury was compromised by a deal whereby Petitioner waived his

right to a jury in return for funding to hire a mental health expert for the mitigation

phase of the trial."  (Petition, Doc. No. 2, at 74, ¶ 1.)  Referring to a post-

conviction affidavit by defense counsel James A. Doughty, Petitioner explains

that in 1991, after Judge Lorig refused multiple pre-trial requests for funds to

employ a mitigation-phase mental health expert, defense counsel John Butz

suggested to Assistant Prosecutor Smith during an off-the-record conference in

chambers that Petitioner might waive his right to a jury trial if the state would stop

opposing defense counsel's request for funds to employ a mitigation-phase

mental health expert.  Petitioner asserts that the prosecutor agreed and Petitioner

intimates that the trial judge tacitly acquiesced.  Petitioner notes that the day after

he waived his right to a jury trial, Judge Lorig granted defense counsel's motion

for funds to employ a mitigation-phase mental health expert.

The Magistrate Judge recommended that this Court deny Petitioner's claim

as without merit.  (ECF No. 67, at PAGEID # 560–64.)  The Magistrate Judge first

set forth verbatim the state appellate court's decision rejecting the claim on

postconviction review.  After noting the fundamental nature of the right to a jury

trial, the Magistrate Judge stated that the colloquy between Petitioner and the trial

court on his jury waiver belied the instant claim.  The Magistrate Judge

proceeded to find that upon careful review of the postconviction evidence and hearing testimony, the state appellate court's factual account was accurate. Reiterating the AEDPA's standard requiring deferential review of state court findings of fact, especially when based on credibility determinations, the Magistrate Judge concluded that Petitioner had "not produced any evidence which tends to rebut the state court's finding of fact or which shows that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court post-conviction proceedings." (*Id.* at PAGEID # 564.)

Petitioner objects to the Magistrate Judge's findings and conclusions. (ECF No. 75, at PAGEID # 664–65.) Petitioner incorporates by reference the arguments he set forth in his Petition and Merit Brief. Although agreeing with the Magistrate Judge that AEDPA requires deferential review of state court factual findings, Petitioner states that because of the fundamental nature of the right to trial by jury, the right may be waived only if the waiver is executed knowingly and voluntarily. To that point, Petitioner states that "[t]he facts developed through Kinley's State Post-Conviction hearing and the discovery obtained therein create a factual presumption that his right to a trial by jury was compromised." (*Id.* at PAGEID # 664.) Petitioner then states that the Report and Recommendations incorrectly determined that deficiencies in counsel's performance did not prejudice Petitioner's right to a fair trial.

The Court finds that Petitioner's objection is not well taken and overrules it. Further, nothing about the Magistrate Judge's decision was clearly erroneous or contrary to law.

Petitioner's contention that he demonstrated a "factual presumption" that his right to a jury was compromised states the incorrect burden for establishing that he is entitled to relief on a claim that the state courts adjudicated on the merits under the AEDPA. Even under the correct standard, Petitioner falls far short of establishing that he is entitled to habeas corpus relief. Two statutory sections inform the issue before the Court—namely whether it was unreasonable, based on the evidence presented, for the state courts to find that neither the prosecution nor the trial court agreed to any deal whereby Petitioner waived a jury in exchange for receiving funds to employ a mitigation-phase mental health expert. According to 28 U.S.C. § 2254(d)(2):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d)(2). In addition, 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Petitioner has neither demonstrated that the state court's finding was unreasonable nor rebutted by clear and convincing evidence the presumption of correctness to which that finding is entitled.

Petitioner raised this claim in postconviction. The trial court originally rejected all of Petitioner's claims without conducting a hearing, but the court of appeals in 1999 remanded the case back to the trial court with instructions to conduct a hearing on Petitioner's compelled jury waiver claim, as well as his claim alleging perjured testimony. After permitting discovery and conducting an evidentiary hearing, the state trial court subsequently issued a decision finding that Petitioner "did not present sufficient evidence to satisfy Ohio Revised Code Section 2933.21, but in fact the evidence overwhelmingly preponderated against Defendant's claim." (J.A. Vol. VII, at 501.)

The state appellate court affirmed the trial court's decision. The state appellate court noted that Petitioner relied on the testimony of his defense attorney, John Butz, as well as the suspicious timing of the trial judge's eventual decision to approve funds for a mitigation-phase psychologist. Even in view of those arguments, the appellate court found that "the state presented ample evidence that there was no trade." (J.A. Vol. VIII, at 424.) In so finding, the state appellate court relied on the following:

> Prosecutors Schumaker and Smith both testified that they had other
> reasons for opposing funds for a mitigation-phase psychologist and that

they would have preferred a jury trial.

The state also presented evidence that Petitioner's defense attorneys had other reasons to prefer a bench trial over a jury trial (*i.e.*, the gruesome nature of the murders).

Petitioner's attempts to undermine the credibility of the state's witnesses fell short.

Although nowhere in the trial record did the prosecutors state that they had wanted a copy of any psychologist's report, that fact may be inferred from the fact that defense attorney Butz eventually agreed to provide them with a copy.

State witnesses Gibson, Collins, and Smith had no reason to mention conversations with defense counsel during which defense counsel explained why they opted for a bench trial over a jury trial because that decision had not been an issue until Petitioner raised the claim in postconviction.

It is entirely plausible that defense counsel would want to avoid a jury in view of the atrocity depicted in the crime scene photographs.

Although the timing of Judge Lorig's eventual decision to grant funds for a mitigation-phase psychologist was suspicious—*i.e.*, the day after Petitioner waived his right to a jury—that is insufficient to find that the state's evidence was not credible.

(J.A. Vol. VIII, at 424–25.)

The Court has reviewed the transcript of the February, 2002 evidentiary hearing and agrees with the Magistrate Judge that the appellate court provided an accurate account of the testimony and evidence. This Court has reviewed the arguments in the Petition and Petitioner's Merit Brief and agrees with the Magistrate Judge that Petitioner produced no evidence rebutting the presumption of correctness to which the state appellate court's factual findings were entitled or

establishing that the state appellate court's findings resulted in a decision that was unreasonable in light of the evidence that was produced. In so concluding, the Court relies on the Supreme Court's recent observation that, although the term "unreasonable" is difficult to define, it certainly consists of more than mere disagreement. *Wood v. Allen*, 558 U.S. 290, 301 (2010). In fact, the Supreme Court went on to determine that even a factual finding that could be deemed "debatable" was not necessarily "unreasonable." *Id.* at 303.

Having reviewed the Petition, Petitioner's Merit Brief, and Petitioner's Corrected Objection, this Court agrees with and adopts the Magistrate Judge's Report and Recommendations, overrules Petitioner's objection, and denies Petitioner's fifteenth ground as without merit.

Notwithstanding the foregoing, this Court is of the view that Petitioner's claim warrants a certificate of appealability. The fact-intensive nature of Petitioner's claim militates in favor of concluding that reasonable jurists could find the denial of Petitioner's claim wrong or at least debatable. Further, this Court has already noted the importance in a capital case of scrutinizing any decision to waive a twelve-person jury in favor of a three-judge panel. And Petitioner's allegation that his waiver was somehow coerced is troubling. The Court accordingly certifies Petitioner's fifteenth ground for relief.

## N. <u>Ground Sixteen</u>: False and/or Inaccurate Testimony by Key State Witness.
## <u>Ground Seventeen</u>: State's Solicitation/Presentation of False Testimony.

In his sixteenth ground for relief, Petitioner asserts that his rights to due

process and a fair trial were violated because a material prosecution witness,

Donald Merriman, provided false and/or inaccurate testimony in several respects.

(Petition, Doc. No. 2, at 78–79.)  According to Petitioner:

> 1.  Donald Merriman testified that he had a conversation with Petitioner
> Kinley in the latter part of January, 1989 on Clifton Avenue in the back
> of the green house across from Springfield South High School, and that
> they were drinking.  Tr. 623–24.  This testimony was false.  P.C. Ex. D,
> Para. 5
>
> 2.   Merriman further testified that during this conversation with
> Petitioner in January of 1989, that [sic] Petitioner asked him if he had
> ever killed anyone.  Tr. 624.  This testimony was false.  P.C. Ex. D,
> Para. 5.
>
> 3.  Merriman testified then that Petitioner told him that he had killed his
> girlfriend and her son, Thelma and David Miller.  Tr. 625.   This
> testimony was false.  P.C. Ex. D., Para. 5.
>
> 4.  Donald Merriman has admitted by way of an affidavit that he never
> had *any* conversation with Petitioner Kinley in January of 1989.  P.C.
> Ex. D, Para 5.  In his affidavit, Merriman admits that he had not even
> seen Petitioner Kinley in years.  Merriman states in his affidavit that the
> first time Merriman saw Kinley was when the two of them were both in
> jail in March of 1989.  P.C. Ex. D, Para. 5.

(*Id*. at 78, ¶ 1.)  Petitioner further asserts that Merriman's entire testimony was

false and that Merriman provided that testimony "so that he would receive

consideration through plea bargains from the State of Ohio in his own theft cases

in Clark County."  (*Id*. at 78, ¶ 2.)

In his seventeenth ground for relief, Petitioner asserts that the State of

Ohio knowingly solicited and presented Donald Merriman's false testimony.

Case No. 3:03–cv–127                                        Page 55 of  86

(Petition, Doc. No. 2, at 80–89.)  Petitioner maintains that the prosecution solicited Merriman's false testimony that he had had a conversation with Petitioner in January 1989 during which Petitioner confessed to having murdered Thelma and David Miller.  That conversation, Petitioner reiterates, never happened.  Petitioner also contends that the prosecution solicited Merriman's false testimony that he had <u>not</u> testified against Petitioner in order to receive leniency in his own criminal cases.  According to Petitioner, ""[t]he State of Ohio had offered Merriman the plea bargains and/or reduced sentencing in both of his cases, conditioned upon his testifying against Juan Kinley.  P.C. Ex. E, Paras 7, 8, 9, and 12."  (*Id.* at 81, ¶ 5.)  Petitioner reiterates here, as he did in support of his sixteenth ground for relief, the damaging nature of Merriman's testimony—testimony that Petitioner confessed to killing Thelma Miller and her son David.

The Magistrate Judge recommended that this Court deny Petitioner's claim as without merit.  (ECF No. 67, at PAGEID #: 565–73.)  The Magistrate Judge recounted Merriman's 1991 trial testimony, the essence of which was during a conversation that Merriman and Petitioner had in January, 1989, Petitioner confessed to having killed Thelma and David Miller.  Merriman also testified that he was not giving testimony in order to receive leniency in his unrelated criminal case.  The Magistrate Judge then noted that in a September 4, 1996 affidavit procured by Petitioner's postconviction counsel, Merriman essentially recanted

his trial testimony, stating that the January 1989 conversation to which he had

testified never occurred and that he had testified against Petitioner solely to

obtain leniency in his own criminal case.  When the postconviction trial court

conducted an evidentiary hearing, the Magistrate Judge continued, Petitioner did

not call Merriman because his counsel could not locate Merriman.  The trial court

did, however, admit Merriman's September 4, 1996 affidavit.  The state presented

the testimony of prosecutors Schumaker, Smith, and Collins, all recounting a

conversation they had had with Merriman some time after the September 4, 1996

affidavit during which Merriman stated that his trial testimony was truthful and that

his September 4, 1996 affidavit was false.  The Magistrate Judge proceeded to

set forth the state trial court's and appellate court's decisions rejecting Petitioner's

claim.

The Magistrate Judge also explained that in May 2006, pursuant to the

Court's discovery order, Petitioner deposed Donald Merriman.  The Court later

granted Petitioner's motion to expand the record with the deposition transcript.  In

the deposition, Merriman testified, consistent with his September 4, 1996

affidavit, that the January 1989 conversation to which he had testified during

Petitioner's trial never happened and that Merriman had testified against

Petitioner solely to obtain leniency in his criminal case.  Petitioner's position was

that Merriman's 2006 deposition testimony constituted clear and convincing

evidence to rebut the presumption of correctness to which the state

postconviction courts' factual findings were entitled. The Magistrate Judge could not consider, much less accept, that argument.

The Magistrate Judge first explained that the postconviction decisions by both the state trial court and the state appellate court fell within the purview of 28 U.S.C. § 2254(d)(2). That framed the issue before the Court as whether the state court factual findings were unreasonable in light of the evidence presented during the postconviction proceeding. To that point, the Magistrate Judge noted that in *Cullen v. Pinholster*, 131 S.Ct. 131 S.Ct. 1388 (2011), the Supreme Court held that in determining whether a state court's adjudication contravened or unreasonably applied clearly established federal law as set forth in 28 U.S.C. § 2254(d)(1), a habeas court must confine its review to the evidence that the state court had before it. The Magistrate Judge concluded that the same restriction extends to the § 2254(d)(2) determination of whether a state court's factual findings were unreasonable in light of the evidence presented. In view of the fact that the state courts in postconviction rejected Petitioner's sixteenth and seventeenth grounds on the merits, the Magistrate Judge concluded that *Pinholster* precluded the Court from considering the 2006 Merriman deposition that Petitioner obtained through habeas corpus discovery. In so concluding, the Magistrate Judge reminded that at the time the Court granted discovery and expanded the record with Merriman's deposition, *Pinholster* did not exist.

That left the Magistrate Judge to determine whether the state courts'

factual findings were unreasonable based on the evidence and testimony

presented during the postconviction proceeding.  According to the Magistrate

Judge's reading of the record, the state court had the following evidence before it

in considering Petitioner's claims alleging that Merriman's testimony was perjury

and the state knew it:

> 1.   During Petitioner's 1991 trial, Donald Merriman testified that in
> January 1989, they had had a conversation during which Petitioner
> admitted killing Thelma and David Miller and that Merriman did not
> testify against Petitioner for the purpose of obtaining leniency in
> Merriman's criminal case;
>
> 2. In a September 4, 1996 affidavit, Merriman testified that the January
> 1989 conversation never occurred and that Merriman had testified
> against Petitioner solely for the purpose of obtaining leniency in
> Merriman's criminal case;
>
> 3.   The 2002 state postconviction evidentiary hearing included
> Merriman's 1996 affidavit but not Merriman's testimony;
>
> 4.   During the 2002 state postconviction hearing, prosecutors
> Schumaker, Smith, and Collins all testified about a conversation they
> had had with Donald Merriman in jail during which Merriman stated that
> his 1991 trial testimony was truthful and that his 1996 affidavit was
> false.

According to the Magistrate Judge, the state court faced a question of

credibility—*i.e.*, which version of Merriman's story to believe.  The Magistrate

Judge observed that Merriman had lied about his testimony at least once.  Noting

that the state trial court had before it Merriman's un-crossed 1996 affidavit,

Merriman's crossed trial testimony, and in-court, crossed testimony by

prosecutors Schumaker, Smith, and Collins, the Magistrate Judge noted the deference reviewing courts owe to witness credibility determinations made by a trial court.  The Magistrate Judge accordingly reached the following determination: "In view of the conflicting evidence before the post-conviction court as well as a habeas court's deferential review, this Court cannot say that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  (ECF No. 67, at PAGEID # 572.)

Petitioner objects to the Magistrate Judge's findings and conclusions. (ECF No. 74, at PAGEID # 642–56.)  Dividing his arguments into two parts, Petitioner argues first that his rights to a fair trial and due process were violated when Donald Merriman lied in his testimony for the state.  Through the postconviction affidavits and habeas corpus discovery, Petitioner explained, it was learned that Merriman, while in jail, saw Petitioner's photograph and learned of the murders of Thelma and David Miller on the news.  When Merriman contacted jailers purporting to have information incriminating Petitioner in the murders, Merriman did so solely for the purpose of gaining release from prison in connection with his own unrelated criminal cases.  The state appellate court in postconviction determined that based on the evidence presented, the trial court could have found for either the state's version of Merriman's testimony or Petitioner's version of Merriman's testimony but found the state's evidence more

credible. The state appellate court noted that without Merriman there to testify,

the trial court was left to weigh Merriman's trial testimony and statements he

made to prosecutors while in jail against the postconviction affidavits in which he

recanted his trial testimony.

Petitioner contends that the state appellate court's finding was

unreasonable in light of the evidence presented. In so arguing, Petitioner relied

almost solely on Merriman's 2006 deposition, during which Merriman not only

reaffirmed his postconviction affidavits recanting his trial testimony, but also

testified on cross-examination that:

1. No one pressured him to sign those postconviction affidavits;

2. He believes he told prosecutors that those postconviction affidavits were truthful;

3. He figured out by himself that his testimony had harmed Petitioner;

4. He did not tell prosecutors that the public defenders had pressured him to sign the postconviction affidavits; and

5. He needed to tell the truth about what he had done because he had changed his life and had been saved through church.

Relying on clearly established Supreme Court precedent, Petitioner explained

that Merriman's perjured testimony was "material" for purposes of finding that it

violated Petitioner's rights to a fair trial and due process because it was the *only*

direct evidence connecting Petitioner to the murders of Thelma and David Miller.

In part two of his argument, Petitioner posits why his convictions and

sentences were unreliable, and his rights to a fair trial and due process violated, by the state's eliciting of false testimony. Donald Merriman, Petitioner reminds, was the state's key witness, insofar as he provided the only direct evidence linking Petitioner to the murders. Merriman testified falsely that in January 1989 Petitioner had confessed the murders and that Merriman was not providing testimony in exchange for leniency in Merriman's own cases. According to Petitioner, Merriman's was false, the prosecution knew it was false, and the prosecution failed to correct it. Petitioner proceeds to offer a plethora of proof that, in Petitioner's view, establishes that Merriman received leniency in a 1987 case charging him with five counts of forgery and in a 1990 case charging him with Grand Theft, and that the "deals" were in place before Merriman testified at Petitioner's trial—testimony that included denials that Merriman was testifying in order to obtain leniency, which testimony the prosecution failed to correct. Petitioner argues that the state appellate court's finding that there was no evidence that the state had promised leniency to Merriman prior to him testifying was unreasonable in light of the evidence. In so arguing, Petitioner again relies almost solely on Merriman's 2006 habeas corpus deposition. Finally, Petitioner discussed Supreme Court precedent in explaining why the state's elicitation of and failure to correct false testimony was material for purposes of establishing a prejudicial violation of Petitioner's constitutional rights.

As for the Magistrate Judge's application of *Pinholster v. Cullen* to preclude consideration of Merriman's 2006 deposition, Petitioner stated—without argument, reasoning, or citations—that the Magistrate Judge incorrectly applied *Pinholster* and that *Pinholster* does not apply to claimed errors governed by § 2254(d)(2).

In Supplemental Report and Recommendations, the Magistrate Judge again recommended that the Court deny Petitioner's claim as without merit. (ECF No. 77, at PAGEID #: 675–77.)  Noting that Petitioner had objected to the original Report and Recommendations at length, the Magistrate Judge observed that all of Petitioner's arguments favoring Merriman's postconviction affidavits recanting his trial testimony over Merriman's trial testimony and Merriman's alleged statements to prosecutors disavowing the postconviction affidavits depended on Merriman's 2006 habeas corpus deposition—a deposition that, according to the Magistrate Judge, *Pinholster* forbids the Court from considering. As for Petitioner's "argument" challenging the application of *Pinholster*, the Magistrate Judge stated, "[h]owever, having announced he has two theories why the Report's reliance on *Pinholster* is wrong, [Petitioner] does nothing to spell out those theories.  How does the R&R incorrectly apply *Pinholster*?  The Objections do not say."  (*Id.* at PAGEID #: 676–77.)  Reiterating that *Pinholster* plainly precludes consideration of Merriman's 2006 deposition, the Magistrate Judge concluded that without the deposition, the state courts' credibility determination is

entitled to deference.

Petitioner objects at length to the Supplemental Report and

Recommendations.  (ECF No. 79, at PAGEID # 690–96.)  At the outset,

Petitioner concedes that *Pinholster* applies and that Merriman's 2006 deposition

cannot be considered.  "However," Petitioner continues, "even absent the

consideration of Merriman's 2004 [sic][1] deposition, the state court's credibility

determination was unreasonable and as such, the conclusion of the R&R and

Supplemental R&R is incorrect."  (*Id.* at PAGEID # 691.)  Petitioner insists that

the credibility determinations of the state courts were unreasonable in light of the

evidence that was presented in postconviction.  According to Petitioner, that

evidence consisted of:

> 1.  Donald Merriman's February 1991 testimony at Petitioner's trial;
>
> 2.  The sentence that Merriman received in 2001 after testifying at Petitioner's trial;
>
> 3.  Merriman's 1996 affidavits recanting his 1991 trial testimony and admitting that he did in fact testify as such solely to obtain leniency in his own case;
>
> 4.  The testimony of three state prosecutors who "allegedly" spoke with Merriman after he made and gave the 1996 affidavits. (*Id.* at 692.)

The fact that the state courts found that the prosecutors' testimony somehow

outweighed Merriman's affidavits and "proof" of the sentencing deal Merriman

---

[1] Although documents multiple times characterize Merriman's deposition having taken place in 2004, the record indicates that Merriman was deposed on May 24, 2006. (ECF No. 44-1.)

received "in exchange" for his testimony, Petitioner asserts, was "unreasonable"

within the meaning of § 2254 (d)(2).  Petitioner further asserts that "[t]he evidence

presented by Kinley in the state court post-conviction proceedings successfully

rebuts the presumption that the trial court's finding of fact was correct."  (*Id*.)

First, according to Petitioner, Merriman's two affidavits were admitted into

evidence at the postconviction hearing.  And in them, Merriman testified that he

had lied at Petitioner's trial and that he had done so to obtain leniency in his own

criminal case.  Further, Petitioner continues, Merriman's sentencing is consistent

with him receiving leniency from the state in exchange for testimony at

Petitioner's trial.  According to Petitioner, neither the state courts nor the

Magistrate Judge took notice of the significance of the circumstances surrounding

Merriman's sentencing.  To that point, Petitioner proceeds to recount again in

detail the circumstances surrounding Merriman's 1987 forgery cases and 1990

Grand Theft case.

Decrying the fact that the state courts "blindly" accepted the prosecutors'

testimony that Merriman disavowed his postconviction affidavits, Petitioner

concludes his objection as follows:

> While it is entirely possible that Merriman did tell them this, it is more
> likely than not that Merriman did so for fear that he would be charged
> with perjury for recanting his previous testimony that he had so greatly
> benefitted from.  The Court of Appeals discounted that Merriman would
> lie to the prosecutors based on testimony wherein they told Merriman
> he did not have to worry about perjury charges.  []  This rationale is
> optimistic at best and incredulous at worst.  The fact of the matter is

that there existed a power differential between the prosecutors and Merriman; Merriman had made the prosecution's case against Kinley and had benefitted from the same. Admitting that he lied to the defense, of all people, flew in the face of the favor shown to him by the prosecution. Merriman surely knew this. Thus, he had everything to lose and nothing to gain by standing by his affidavits. The law does not exist in a vacuum and the post-conviction trial court and state court of appeals should have taken this into consideration when faced with a question of credibility. Given Merriman's history, his sentencing considerations, and his affidavits, finding that his testimony was credible was clearly unreasonable.

(ECF No. 79, at PAGEID # 695–96.)

Petitioner's arguments, however persuasive on their face, are long on conjecture but short on substance. Petitioner's arguments are no substitute for evidence. And without evidence, the arguments fall short of demonstrating that a credibility determination made by the state courts in postconviction was unreasonable in light of the evidence presented. Petitioner's arguments also fail to constitute clear and convincing evidence sufficient to rebut the presumption of correctness to which the state courts' credibility determination is entitled.

As the Magistrate Judge noted, front and center in Petitioner's claim is a credibility determination made by the state trial court and affirmed by the state appellate court as to which version of Donald Merriman's story to believe. Also prevalent throughout the Magistrate Judge's Reports and this instant decision are two unquestioned standards governing this Court's review of the central issue:

1. Pursuant to 28 U.S.C. § 2254(d)(2), a federal habeas court may not grant relief on a claim adjudicated on the merits by the state court unless the state court's decision involved a factual determination that

was unreasonable in light of the evidence presented at the state court proceeding; and

2.  Pursuant to 28 U.S.C. § 2254(e)(1), a factual finding made by a state court shall be presumed correct unless rebutted by clear and convincing evidence.

The state appellate court, the Magistrate Judge, or this Court could look at the evidence and reach its own conclusion as to why one version of Donald Merriman's story is more likely than not; but any such undertaking flies in the face of governing law and common sense for one critical reason:  The court that made the credibility determination at issue had the benefit of something that neither the state appellate court, nor the Magistrate Judge, nor this Court had—something that bestows upon the trial court's determination a presumption of correctness—in-court perspective.  It is not for this Court in habeas corpus to re-determine the trial court's credibility assessment without having had that in-court perspective and in the absence of clear and convincing evidence to rebut the presumption of correctness to which the state court's credibility determination is entitled.  Case law bears this out.

First, as to the § 2254(d)(2) determination whether the trial court's credibility determination was unreasonable in light of the evidence presented in postconviction, the Court notes that the United States Supreme Court has provided guidance on making that determination.  In *Rice v. Collins*, 546 U.S. 333 (2006), the Supreme Court was faced with a challenge to the state trial court's

decision to credit the prosecutor's race-neutral explanation for the prosecutor's peremptory strike of an African-American juror. Rejecting the challenge, the Supreme Court observed that, "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination." *Id*. at 341–42. The Supreme Court let stand the trial court's determination in spite of finding that the prosecutor had provided an "unorganized explanation" that included a "troubling" reference to the stricken juror's gender. *Id*. at 336. In so holding, the Supreme Court took the federal court of appeals to task for making its own credibility determination based solely on the same record (minus the actual in-court perspective) that previous reviewing courts had had. At a minimum, overcoming the § 2254(d)(2) threshold requires more than mere disagreement. *See, e.g.*, *Young v. Hofbauer*, 52 F. App'x 234, 237 (6th Cir. 2002) ("a federal habeas court may not grant relief under § 2254(d)(2) simply because the court disagrees with a state trial court's factual determination.").

Courts rarely find the existence of clear and convincing evidence sufficient to rebut the § 2254(e)(1) presumption of correctness. In *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), the Sixth Circuit was faced with a challenge to the district court's application of evidence and facts surrounding a claim of self-defense. The Sixth Circuit declined to find proof sufficient to overcome the § 2254(e)(1) hurdle and deferred to the state court's factual finding, even while

agreeing that evidence produced by the petitioner had shed doubt on the credibility of certain witnesses.  In *Givens v. Yukins*, 238 F.3d 420 (Table), 2000 WL 1828484 (6th Cir. Dec. 5, 2000), the Sixth Circuit considered a habeas case involving conflicting testimony from a pretrial hearing between the petitioner and detectives concerning the petitioner's *Miranda* waiver.  The Sixth Circuit concluded that habeas corpus courts cannot "redetermine witness credibility" observed solely by the state court.  *Id*. at *10.  In so doing, the Sixth Circuit rejected as "clear and convincing evidence" the inconsistencies between testimony at the pretrial hearing and the trial.  In *Noling v. Bradshaw*, No. 5:04 CV 1232, 2008 WL 320531 (N.D. Ohio Jan. 31, 2008), the district court considered a habeas case in which the petitioner claimed that the prosecution had coerced the petitioner's co-defendants into testifying falsely against the petitioner.  The petitioner relied primarily on affidavits by those co-defendants produced during state post-conviction proceedings, but the state trial court found those affidavits not credible.  The district court deferred to that credibility determination, stating that "while the witnesses' testimony to which Noling points is undercut by their subsequent affidavits, it was up to the state courts to weigh the testimony of the witnesses or correct any findings of fact."  *Id*. at *33.

The state trial court in the instant case considered Donald Merriman's sworn trial testimony, Donald Merriman's sworn affidavits recanting that trial testimony, and the in-court testimony of prosecutors recounting a conversation

with Merriman during which Merriman recanted his affidavits and stood by his trial testimony. Faced with a less than ideal question of which version of Merriman's story to believe, the trial court found more credible the prosecutors' testimony supporting Merriman's trial testimony over Merriman's affidavits recanting his trial testimony. As in the cases discussed above, this Court is in no position to second-guess that credibility determination and owes it deference in the absence of clear and convincing evidence to rebut the presumption of correctness. And Petitioner has produced no such evidence because arguments are not evidence.

With respect to the evidence that the state trial court considered in postconviction, Petitioner assails the testimony of three prosecutors who "allegedly" spoke with Merriman after he had given his 1996 affidavit. (ECF No. 79, at PAGEID # 692.) Petitioner's veiled accusation that all three prosecutors lied about that conversation is unavailing. All three prosecutors testified under oath and were subject to cross examination. Petitioner has produced absolutely no evidence even suggesting that all three prosecutors lied in recounting that conversation with Merriman. For the same reasons, Petitioner's assertion that the state courts "blindly" accepted the prosecutors' testimony (*Id.* at 695) is equally unavailing.

Petitioner's contention that it is self-evident from the leniency of the sentences that Merriman received after testifying against Petitioner is pure conjecture, unsupported by a shred of evidence, and wholly insufficient to

overcome the postconviction testimony that was given under oath and subject to cross examination.  Petitioner speculates that Merriman told the prosecutors that his trial testimony was truthful and his affidavits were false because Merriman was afraid that he would be charged with perjury for recanting his previous testimony.  (*Id*. at PAGEID # 695.)  In addition to being pure speculation, Petitioner's argument is self-defeating.  Where was that "fear" when Merriman originally executed the affidavits recanting his trial testimony?  Petitioner asserts that the lenient sentences Merriman received constitute clear and convincing evidence to rebut presumption of correctness to which the trial court's credibility determination is entitled.  The Court disagrees, as Petitioner has presented no evidence establishing or plausibly suggesting a nexus between Merriman's incriminating testimony against Petitioner and the sentences that Merriman subsequently received.  Petitioner's assertion that the leniency Merriman received is consistent with his having received a "deal" from the prosecution in exchange for testifying against Petitioner is just that—an assertion, not evidence.  As such, the argument is insufficient to undermine the trial court's credibility determination.  Petitioner asserts that neither the state courts nor the Magistrate Judge took into consideration the circumstances surrounding Merriman's sentences (*Id*. at PAGEID # 693) but the state appellate court expressly noted the fact that Merriman appeared to have received a lenient sentence subsequent to testifying against Petitioner.  The state appellate court simply found that that fact

was insufficient to discredit the trial court's factual finding due to the lack of evidence establishing a nexus between Merriman's testimony against Petitioner and the lenient sentences.

In sum, the foregoing supports the Magistrate Judge's determination that the state trial court's credibility determination enjoys a presumption of correctness which Petitioner failed to rebut by clear and convincing evidence, and that the state court's determination was not objectively unreasonable in light of the evidence that was presented in postconviction.

Having reviewed the Petition, Petitioner's Merit Brief, and Petitioner's Objections, the Court agrees with and adopts the Magistrate Judge's Report and Recommendations and Supplemental Report and Recommendations, overrules Petitioner's objections, and denies Petitioner's sixteenth and seventeenth grounds as without merit.

The Court is of the view, however, that Petitioner's claim is deserving of further review on appeal. This Court remains convinced that the presumption of correctness to which the credibility determination in this instance is entitled presents a formidable hurdle to habeas relief on Petitioner's claim. In view of the damaging nature of Merriman's testimony and the importance of that testimony to the state's case, as well as the length to which this issue was litigated in the state courts and the harmful effect of the application of *Pinholster v. Cullen*, this Court is satisfied that reasonable jurists could find the decision denying Petitioner's

claim debatable or wrong. The Court accordingly certifies Petitioner's sixteenth and seventeenth grounds for relief.

## O. <u>Ground Eighteen</u>: Conflicted Representation.

Petitioner argues in his eighteenth ground for relief that he was denied his rights to a fair trial and due process because a conflict existed in his representation. (Petition, Doc. No. 2, at 90–92.) According to Petitioner, at various times from the date he was indicted, March 16, 1989 until he was sentenced to death in May 1991, he was represented by the Clark County Public Defender's Office or his defense attorneys were in contact with the Clark County Public Defender's Office at the same time that the Clark County Public Defender's Office was representing Donald Merriman in connection with his 1987 forgery case and his 1990 Grand Theft case. Petitioner asserts that the Clark County Public Defender's Office was aware of the conflict—specifically, that the office was aware, when it was representing Petitioner or assisting Petitioner's trial attorneys, of Merriman's statement to the prosecutor and of the fact that Merriman would testify against Petitioner. Petitioner also argues that while aware of the conflict, it was the Clark County Public Defender's Office that arranged the deal by which Merriman would testify against Petitioner in exchange for a reduced sentence. Finally, Petitioner asserts that during cross-examination of Merriman, the trial court was apprised of the conflict and was asked to obtain a waiver by Petitioner of any conflict. Petitioner contends that the waiver he

executed was uninformed, null and void, and wholly invalid, and that the trial

court's acceptance of such a waiver violated Petitioner's rights to a fair trial, due

process, and effective assistance of counsel.

 The Magistrate Judge recommended that this Court reject Petitioner's

claim as without merit.  (ECF No. 67, at PAGEID # 573–81.)  The Magistrate

Judge began by recounting the state appellate court's decision affirming the state

trial court's rejection of the claim in postconviction.  The Magistrate Judge then

explained that although Petitioner had framed the claim as denial of the rights to

due process and a fair trial, the claim was best characterized as a Sixth

Amendment claim of ineffective assistance of counsel as discussed in *Gillard v.*

*Mitchell*, 445 F.3d 883, 890 (6th Cir. 2000).  The Magistrate Judge next set forth

the case law governing claims of ineffective assistance due to conflict of

interest—primarily *Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980).  Citing *United*

*States v. Straughter*, 950 F.2d 1223, 1234 (6th Cir. 1991), the Magistrate Judge

explained that an accused may waive the right to conflict-free counsel.

 After recounting the facts as set forth in the transcript and record, the

Magistrate Judge stated that, "[f]irst, this Court cannot say that there was an

actual conflict of interest in Mr. Kinley's representation by the Clark County Public

Defender."  (ECF No. 67, at PAGEID # 578.)  The Magistrate Judge explained

that the assistant public defender representing Donald Merriman in his 1987

forgery case withdrew from that case some three days before Petitioner was

indicted and six days before Petitioner entered a plea on the indictment and was

assigned Mr. Kaech of the Clark County Public Defender's Office. Mr. Kaech

later withdrew from representing Petitioner, after which the Clark County Public

Defender's Office represented Merriman in an unrelated theft case. Thus, the

Magistrate Judge concludes, at no time did the Clark County Public Defender's

Office represent Petitioner and Donald Merriman simultaneously. The Magistrate

Judge noted that Mr. Kaech's subsequent representation of Petitioner was for the

limited purpose of examining the DNA expert witnesses and that Mr. Kaech

painstakingly questioned those witnesses. There was no evidence, the

Magistrate Judge determined, that Mr. Kaech's representation of Petitioner on the

DNA issue was adversely affected by the alleged conflict of interest. The

Magistrate Judge also determined that the record refuted any claim by Petitioner

that he was unaware of any possible conflict.

With respect to Petitioner's claim challenging the validity of his waiver of

any conflict of interest, the Magistrate Judge first noted that it was questionable

whether Petitioner had ever presented that precise claim to the state courts but

then acquiesced to address the claim on the merits, due to Respondent's failure

to raise a procedural default defense. The Magistrate Judge concluded from the

transcript and circumstances that Petitioner executed a knowing, intelligent, and

voluntary waiver of any conflict of interest. The Magistrate Judge noted that

Petitioner twice agreed to Mr. Kaech's representation of him and waived any

possible conflict of interest, and that nothing raised any questions about Petitioner's ability to waive that right.

Based on the foregoing, the Magistrate Judge concluded that the state court's decision denying Petitioner's claim did not contravene or unreasonably apply clearly established federal law and did not rely on a factual determination that was unreasonable in light of the evidence presented. The Magistrate Judge accordingly recommended that this Court reject Petitioner's eighteenth ground for relief.

Petitioner objects to the Magistrate Judge's findings and conclusions. (ECF No. 74, at PAGEID # 656–58.) Citing the fact-sensitive nature of his claim, Petitioner begins by recounting again verbatim the same facts he set forth in his Petition. He proceeds to assert that his counsel breached a duty of loyalty they owed to Petitioner when they also represented Merriman, especially in light of subsequent allegations that Merriman lied and committed perjury during his testimony at Petitioner's trial. After reciting the holding in *Cuyler v. Sullivan* as to when prejudice must be presumed from conflicted representation, Petitioner then states that "the R&R incorrectly determined at pp. 144-145 that the state court did not find that the conflict prejudiced him and violated his constitutional rights." (ECF No. 74, at PAGEID # 658.) Petitioner's objections end there.

The Magistrate Judge in the Supplemental Report and Recommendations touched upon Petitioner's objection. (ECF No. 77, at PAGEID # 677–78.) The

Magistrate Judge noted that he had recommended dismissal of Petitioner's claim because the record clearly established that at no time did the Clark County Public Defender's Office represent Petitioner and Donald Merriman simultaneously and recounted the facts establishing that matter. The Magistrate Judge then noted that Mr. Kaech had re-entered Petitioner's case for the limited purpose of examining the DNA witnesses and that Petitioner had waived any possible conflict of interest stemming from that limited representation. Finally, the Magistrate stated that his original Report had concluded that the state court's decision rejecting Petitioner's claim did not contravene or unreasonably apply clearly established federal law. The Magistrate Judge then said:

> Petitioner objects, but largely relies on a construal of the facts which is unpersuasive. The Magistrate Judge does not believe any additional analysis is needed on this claim beyond that presented in the Report.

(ECF No. 77, at PAGEID # 678.) Consequently, Petitioner raises no further objections.

The Court finds Petitioner's objection unpersuasive because the record more squarely supports the Magistrate Judge's accounting of the facts than Petitioner's. And on those facts, Petitioner's claim fails. The record demonstrates that the only time the Clark County Public Defender's Office arguably represented Petitioner and Donald Merriman simultaneously, Petitioner waived any conflict of interest, and the record contains no evidence that any alleged conflict adversely affected Petitioner's representation.

On March 10, 1989, Attorney Morris of the Clark County Public Defender's Office withdrew from Donald Merriman's 1987 forgery case specifically because Merriman was a potential witness against Petitioner.  (J.A. Vol. VI, at 100.)  Days later, on March 13, 1989, Petitioner was indicted in connection with the murders of Thelma and David Miller.  (J.A. Vol. I, at 16–17.)  A few days after that, Petitioner entered a plea to the indictment and was assigned Noel Kaech of the Clark County Public Defender's Office.  (*Id*. at 21.)  Over a year later, on October 25, 1990, Mr. Kaech asked for and received permission to withdraw from Petitioner's case, due to health reasons.  (*Id*. at 125–26.)  One month later, on November 21, 1990, William Merrell of the Clark County Public Defender's Office entered an appearance for Donald Merriman on Merriman's 1990 theft case. (J.A. Vol. VI, at 100.)

On March 4, 1991, Mr. Kaech was permitted to return to Petitioner's case for the limited purpose of examining the DNA witnesses.  (Tr. Vol. III, at 223–25.) Petitioner expressly acquiesced to Mr. Kaech's limited return.  (*Id*.)  During trial, Petitioner expressly waived any conflict stemming from the fact that Mr. Kaech would re-join Petitioner's case for the DNA witnesses while the Clark County Public Defender's Office was representing Donald Merriman.  (Tr. Vol. VI, at 819.) Contrary to Petitioner's assertion, the right to conflict-free representation *may* be waived, so long as the waiver is knowing, intelligent, and voluntary.  *United States v. Brock*, 50 F.3d 762, 772 (6th Cir. 2007); *Williams v. Meachum*, 948 F.2d

863, 866–67 (2nd Cir. 1991); *United States v. Reese*, 699 F.2d 803, 805 (6th Cir.

1983); *Bray v.* Cason, 375 F. App'x 466, 471 (6th Cir. Apr. 21, 2010).  The record

reflects that Petitioner entered a knowing, intelligent, voluntary waiver of any

alleged conflict of interest.  No persuasive evidence suggests otherwise.

Petitioner's assertion that he was unaware of the conflict is flatly belied by the

record.  (Tr. Vol. VI, at 819.)  Further, as the Magistrate Judge determined, a

review of Kaech's extensive examination of the DNA witnesses belies any

suggestion that Kaech's representation of Petitioner was adversely impacted by

any alleged conflict.

Petitioner's version of the facts is unsupported by the record.  For instance,

Petitioner states in the second paragraph of his claim (Petition, Doc. No. 2, at 90)

that at the time Petitioner was indicted, "Donald Merriman was being represented

by the Clark County Public Defender's Office on case number 87-CR-100."

(Petition, Doc. No. 2, at 90.)  As demonstrated above, that is not true.  The public

defender's office had withdrawn from Merriman's case several days *before*

Petitioner was indicted.  In postconviction, Petitioner submitted an affidavit by

Donald Merriman stating, among other things, that even after Ronald Morris of

the public defender's office officially withdrew from Merriman's 1987 theft case in

March 1991, Morris remained in contact with Merriman throughout that 1987 case

and actually worked out the deal whereby two charges against Merriman were

dropped and his sentences for the other three would run concurrently.  The

record contains no other evidence corroborating that assertion.  And even assuming Morris had a hand in working out Merriman's plea deal to the 1987 case, Merriman's affidavit was silent as to when that might have occurred.  In short, the record more accurately supports the Magistrate Judge's findings and conclusions than Petitioner's assertions.

That being so, nothing about the state appellate court's decision contravened or unreasonably applied federal law or relied on an unreasonable factual determination.  For the foregoing reasons, the Court overrules Petitioner's objection, adopts the Report and Recommendations, and **DENIES** Petitioner's eighteenth ground for relief as without merit.

The Court is satisfied, however, that Petitioner's claim warrants a certificate of appealability.  The record is sufficient to conclude that the only time the Clark County Public Defender's Office represented both Petitioner and Donald Merriman simultaneously, Petitioner waived any conflict.  Because the record is not air tight on the issue, however, the Court errs on the side of concluding that the issue deserves further consideration on appeal.  The Court accordingly certifies Petitioner's eighteenth ground for relief for appeal.

**P.  Ground Nineteen:  Trial Counsel Ineffectiveness-Blood Evidence.**

**Ground Twenty:  Trial Counsel Ineffectiveness-Blood Spatter Expert.**

Petitioner asserts in his nineteenth and twentieth grounds for relief that his trial attorneys performed deficiently and to Petitioner's prejudice in failing to challenge

the state's bloodstain evidence and/or to present a blood spatter expert.
(Petition, Doc No. 2, at 93–94, 95.)  Petitioner explains that the two victims
suffered numerous cuts all over their bodies and that the crime scene contained a
large volume of blood.  Petitioner continues that he was arrested only after a
small bloodstain found on his coat was matched to one of the victims, David
Miller.  Petitioner complains that his trial attorneys failed to challenge that
evidence at trial.  Further, according to Petitioner, a blood spatter expert in
postconviction concluded from his review of the evidence that a significant
amount of blood spatter would have been deposited on the person who killed
Thelma and David Miller.  To that point, Petitioner notes that at least two
witnesses testified that Petitioner was wearing the same clothing on the afternoon
after the murders as he was wearing on the morning before the murders.
Petitioner asserts that he was prejudiced by the absence of a blood spatter
expert, making the verdict against him unreliable and unfair.

The Magistrate Judge recommended that the Court deny Petitioner's claims as
without merit.  (ECF No. 67, at PAGEID # 581–84.)  Petitioner did not object to
the Magistrate Judge's findings and conclusions and the time for doing so has
expired.  Moreover, the Court is not persuaded that any part of the Magistrate
Judge's Report and Recommendations addressing Petitioner's nineteenth and
twentieth grounds for relief was "clearly erroneous" or "contrary to law" sufficient
to require this Court to modify or set it aside.  Having reviewed the Petition and

Merit Brief, as well as Respondent's Return of Writ, this Court adopts the Report

and Recommendations (ECF No. 67, at PAGEID # 581–84).  The Court

accordingly **DENIES** Petitioner's nineteenth and twentieth grounds for relief.

Because the Court agrees with and adopts the Magistrate Judge's decision to

deny Petitioner's nineteenth and twentieth grounds for relief and because

Petitioner did not object to the Magistrate Judge's recommendation, the Court

concludes that Petitioner's nineteenth and twentieth grounds for relief do not

warrant a certificate of appealability.

**Q.  Ground Twenty-One:  Murder Weapon Has Been Lost.**

    **Ground Twenty-Two:  Trial Counsel Ineffectiveness-Not Testing Weapon.**

Petitioner asserts in his twenty-first ground for relief that although an issue

exists concerning whether the machete entered into evidence was actually the

murder weapon, Petitioner cannot now have an expert test the machete because

it has been lost, misplaced, or destroyed.  (Petition, Doc. No. 2, at 96–98.)  In his

twenty-second ground for relief, Petitioner argues that his trial attorneys were

ineffective for failing to have an expert test the machete.  (*Id.* at 99.)

The Magistrate Judge recommended that the Court deny Petitioner's

claims as without merit.  (ECF No. 67, at PAGEID # 584–87.)  Petitioner did not

object to the Magistrate Judge's findings and conclusions and the time for doing

so has expired.  Moreover, the Court is not persuaded that any part of the

Magistrate Judge's Report and Recommendations addressing Petitioner's twenty-first and twenty-second grounds for relief was "clearly erroneous" or "contrary to law" sufficient to require this Court to modify or set it aside. Having reviewed the Petition and Merit Brief, as well as Respondent's Return of Writ, this Court adopts the Report and Recommendations (ECF No. 67, at PAGEID # 584–87). The Court accordingly **DENIES** Petitioner's twenty-first and twenty-second grounds for relief.

Because the Court agrees with and adopts the Magistrate Judge's decision to deny Petitioner's twenty-first and twenty-second grounds for relief and because Petitioner did not object to the Magistrate Judge's recommendation, the Court concludes that Petitioner's twenty-first and twenty-second grounds for relief do not warrant a certificate of appealability.

R. <u>Ground Twenty-Three</u>: **Trial Counsel's Failure to Call Dawn Mitchell.**
   <u>Ground Twenty-Five</u>: **Trial Counsel's Failure to Call Richard Howard.**

In his twenty-third ground for relief, Petitioner argues that his trial attorneys were ineffective for failing to call Dawn Mitchell, who would have testified among other things about the description of the adult white male who was in Thelma Miller's car on the morning of the murders when Mitchell stopped by Petitioner's house. (Petition, Doc. No. 2, at 100–01.) Petitioner asserts in his twenty-fifth ground for relief that his counsel were ineffective for failing to call Richard Howard. Petitioner claims that he spent a considerable amount of time with

Howard on the morning of the murders and that Howard would have testified about Thelma Miller's visit to Petitioner's home that morning and about having seen Petitioner with $800 cash.  (*Id.* at 104–05.)

The Magistrate Judge recommended that this Court reject Petitioner's claims, concluding upon his own review of the evidence that the state appellate court's decision rejecting the claims in postconviction did not contravene or unreasonably apply clearly established federal law.  (ECF No. 67, at PAGEID # 587–92.)  Petitioner did not object to the Magistrate Judge's findings and conclusions and the time for doing so has expired.  Moreover, the Court is not persuaded that any part of the Magistrate Judge's Report and Recommendations addressing Petitioner's twenty-third and twenty-fifth grounds for relief was "clearly erroneous" or "contrary to law" sufficient to require this Court to modify or set it aside.  Having reviewed the Petition and Merit Brief, as well as Respondent's Return of Writ, this Court adopts the Report and Recommendations (ECF No. 67, at PAGEID # 587–92).  The Court accordingly **DENIES** Petitioner's twenty-third and twenty-fifth grounds for relief.

Because the Court agrees with and adopts the Magistrate Judge's decision to deny Petitioner's twenty-third and twenty-fifth grounds for relief and because Petitioner did not object to the Magistrate Judge's recommendation, the Court concludes that Petitioner's twenty-third and twenty-fifth grounds for relief do not warrant a certificate of appealability.

**S.  Ground Twenty-Nine:  Racial Discrimination in Death Sentence.**

Petitioner argues in his twenty-ninth ground for relief that his rights to a fair trial, due process, and equal protection were violated because the death penalty in Clark County is administered in a racially discriminatory manner.  (Petition, Doc. No. 2, at 111–13.)

The Magistrate Judge recommended that this Court deny Petitioner's claim, essentially as foreclosed by United States Supreme Court and Sixth Circuit case law.  (ECF No. 67, at PAGEID # 592–94.)  Petitioner did not object to the Magistrate Judge's findings and conclusions and the time for doing so has expired.  Moreover, the Court is not persuaded that any part of the Magistrate Judge's Report and Recommendations addressing Petitioner's twenty-ninth ground for relief for relief was "clearly erroneous" or "contrary to law" sufficient to require this Court to modify or set it aside.  Having reviewed the Petition and Merit Brief, as well as Respondent's Return of Writ, this Court adopts the Report and Recommendations (ECF No. 67, at PAGEID #: 592–94).  The Court accordingly **DENIES** Petitioner's twenty-ninth ground for relief.

Because the Court agrees with and adopts the Magistrate Judge's decision to deny Petitioner's twenty-ninth ground for relief and because Petitioner did not object to the Magistrate Judge's recommendation, the Court concludes that Petitioner's twenty-ninth ground for relief does not warrant a certificate of appealability.

## III.  DISPOSITION

For the foregoing reasons, the Court agrees with and **ADOPTS** the Report and Recommendations (ECF No. 67) and the Supplemental Report and Recommendations (ECF No. 77), **DENIES** Petitioner's claims, and **DISMISSES** this habeas corpus action with prejudice.

The Court **CERTIFIES** the following issues for appeal: Grounds 5 & 6; Ground 15; Grounds 16 & 17; and Ground 18.  The Court **DENIES** a certificate of appealability as to all other issues.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON**
**United States District Judge**