# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Juan A.L. Kinley,

        Petitioner,

    v.

Margaret Bradshaw, Warden,

        Respondent.

Case No.  3:03-cv-127

Judge Michael H. Watson

Magistrate Judge Michael R. Merz

## <u>OPINION AND ORDER</u>

Final judgment dismissing this capital habeas corpus action was entered on October 2, 2014.  ECF Nos. 85 and 86.  This matter is back before the Court on a remand order by the United States Court of Appeals for the Sixth Circuit, which instructed this Court "to reconsider its October 2, 2014 order with respect to petitioner's Sixteenth and Seventeenth grounds for relief in light of new deposition testimony," provided the Court with jurisdiction to do so, and clarified that this Court "should issue an additional ruling on petitioner's Sixteenth and Seventeenth grounds for relief once it has reconsidered these claims in light of the new deposition testimony."  ECF No. 139.  Also before the Court is Petitioner's Motion to Hold these Proceedings in Abeyance Pending the Exhaustion of State Court Remedies.  ECF No. 142.  For the following reasons, Petitioner's motion to hold these proceedings in abeyance is **DENIED** as unwarranted, and, upon reconsideration of Petitioner's claims in light of the new

deposition testimony, Petitioner's sixteenth and seventeenth grounds for relief are **DENIED** as without merit.

### I. Background

On October 2, 2014, this Court issued an Opinion and Order denying Petitioner's claims and dismissing his habeas corpus action with prejudice.  ECF No. 85.  In grounds sixteen and seventeen, Petitioner argued that his rights to due process and a fair trial were violated because a material prosecution witness, Donald Merriman ("Merriman"), provided false and/or inaccurate testimony and because the state knowingly solicited and presented that false testimony at trial.

At Petitioner's trial, Merriman testified that he had spoken with Petitioner in January of 1989.  Merriman testified that Petitioner asked him during that conversation whether he had ever killed anyone and then confessed that he (Petitioner) had killed his girlfriend and her son, Thelma and David Miller. Petitioner argued that Merriman's trial testimony was false and that Merriman admitted, by way of two affidavits obtained by Petitioner's postconviction counsel in 1996, that the January 1989, conversation never happened and that Merriman had not seen Petitioner in years before they were jailed together in *March* 1989. Merriman also averred that he provided the fabricated testimony in order to receive favorable treatment in two criminal cases he had pending.  Relatedly, Petitioner further argued that the prosecution knowingly solicited and presented

Case No. 3:03-cv-127                                             Page 2 of 41

Merriman's false testimony, in regards both to the alleged conversation with Petitioner and to Merriman's denial that he was testifying in order to obtain favorable treatment in his own criminal cases.

> This Court rejected Petitioner's claims, explaining:

> [P]etitioner's arguments, however persuasive on their face, are long on conjecture but short on substance. Petitioner's arguments are no substitute for evidence. And without evidence, the arguments fall short of demonstrating that a credibility determination made by the state courts in postconviction was unreasonable in light of the evidence presented. Petitioner's arguments also fail to constitute clear and convincing evidence sufficient to rebut the presumption of correctness to which the state courts' credibility determination is entitled.

Opinion and Order, ECF No. 85, at PageID 783. The Court concluded that the state courts' postconviction decisions rejecting Petitioner's claims did not involve unreasonable factual determinations in light of the evidence presented within the meaning of 28 U.S.C. § 2254(d)(2) and that Petitioner had not rebutted the presumption of correctness afforded those factual determinations by clear and convincing evidence as required by 28 U.S.C. § 2254(e)(1). *Id*. at PageID 783-84. The Court reasoned that the factual determinations at issue concerned an assessment of Merriman's credibility vis-à-vis the different testimony he provided at different times and that the state trial court in postconviction had the benefit of something that neither the state appellate court nor this Court had the benefit of: in-court perspective. At this point, a recitation of the various iterations of Merriman's testimony is in order.

Case No. 3:03-cv-127                                                  Page 3 of 41

*First*, as noted above, at Petitioner's 1991 trial, Merriman testified that he had encountered Petitioner in late January of 1989 and that, while they were talking and having a few drinks, Petitioner asked Merriman whether he (Merriman) had ever killed anyone. According to Merriman, Petitioner then proceeded to admit that he (Petitioner) had killed his girlfriend and her son. Merriman further testified that when he learned about the murders while in jail in March of 1989, he told the police about the January 1989 conversation because it was the right thing to do. Merriman denied that he tried to bargain for favorable treatment in his unrelated criminal case, claiming he knew that the prosecutor did not make deals. ECF No. 104-1, at PageID 7326-46.

*Then*, in an affidavit signed on June 19, 1996, which was obtained (and drafted) by Petitioner's postconviction counsel, Merriman detailed how he sent a note to his jailer in March of 1989 offering information about Petitioner and how he received assurances from the prosecutor's office and a detective of favorable treatment in two criminal cases against him if he testified against Petitioner consistently with what he had indicated to authorities he would say. ECF No. 44-4, at PageID 181–82.

*And then*, in another affidavit signed on September 4, 1996, which was also obtained (and drafted) by Petitioner's postconviction counsel, Merriman attested:

> [O]n March 6, 1991, I testified on behalf of the State against Juan

Kinley. I testified that Juan Kinley had told me that he killed Thelma and David Miller. That testimony was given solely to help my own case and to facilitate my receiving a reduced sentence. Juan Kinley and I did not have a conversation in January of 1989. In fact, until I saw him in jail after he was arrested, I had not seen him in years.

ECF No. 44-3, at PageID 169.

In opposing Petitioner's false testimony claims, the state submitted an affidavit by David E. Smith ("Smith"), an assistant Clark County Prosecutor who prosecuted both Petitioner in his capital murder trial and Merriman in his forgery criminal case. ECF No. 102-10, at PageID 3681-82. Smith averred, among other things, that he never arranged any deals and was not aware of anyone else arranging deals with Merriman whereby Merriman would receive favorable treatment in his criminal cases (one for forgeries and the other for grand theft) in exchange for his testimony against Petitioner.

After the trial court rejected Petitioner's postconviction action without holding a hearing, the Court of Appeals determined that Petitioner was entitled to an evidentiary hearing on, among other issues, the credibility of Merriman's affidavits recanting his trial testimony. Court of Appeals Decision, ECF No. 102-14, at PageID 4564-66, 4569. According to Petitioner's brief on appeal following the trial court's evidentiary hearing, postconviction counsel spent several hours with Merriman at a Veterans Administration hospital in Dayton in April of 2000, during which Merriman assured counsel that he was willing to testify at the evidentiary hearing that he had lied at trial about Petitioner's alleged confession.

ECF No. 102-14, at PageID 4655. But, when it came time for the trial court to conduct the evidentiary hearing, Merriman was nowhere to be found. *Id*.

*So then*, during the evidentiary hearing, four Clark County Prosecutors—Stephen Schumaker, David Smith, Darnell Carter, and Stephen Collins—testified about conversations they purportedly had with Merriman in January of 1997 at the Warren Correctional Institution while they were there speaking to witnesses in a different capital prosecution. Postconviction Hearing Transcript, ECF No. 104-2, at PageID 8604-8746; 8750-63. All four testified that Merriman had told them in January of 1997 that his trial testimony had been true and that he had signed the 1996 affidavits recanting his trial testimony only because Petitioner's postconviction counsel had appealed to Merriman's conscience and so that Petitioner's postconviction counsel would leave him alone. *Id*. Schumaker, Smith, and Carter also testified that no deals or promises of leniency had been provided or offered to Merriman in exchange for his testimony at Petitioner's trial. After the evidentiary hearing, the state trial court again rejected Petitioner's postconviction action. ECF No. 102-12, at PageID 4312-16. The Court of Appeals affirmed that decision, ECF No. 102-14, at PageID 4742-52, and the Ohio Supreme Court declined to exercise jurisdiction over Petitioner's appeal without opinion, ECF No. 102-15, at PageID 5064.

*Finally*, in a 2006 deposition conducted during these habeas corpus proceedings, Merriman essentially reiterated the veracity of his 1996 affidavits

and again recanted his trial testimony. ECF No. 44-1, at PageID 191-95.

As noted above, this Court did _not_ consider Merriman's 2006 deposition, concluding that _Cullen v. Pinholster_, 563 U.S. 170, 181-82 (2011), precluded review. In _Pinholster_, the Supreme Court held that in determining whether a state court's merits adjudication was unreasonable as set forth in 28 U.S.C. § 2254(d)[1], a habeas court must confine its review to the evidence that the state court had before it.[2] Because the state courts that rejected Petitioner's claims in postconviction did _not_ have Merriman's 2006 deposition before them, this Court concluded that it, likewise, could not consider the deposition when assessing the reasonableness of those postconviction decisions. Opinion, ECF No. 85, at PageID 775, 781; _see also_ Report, ECF No. 67, at PageID 570-71; Supplemental Report, ECF No. 77, at PageID 676-77. And, as noted above, this Court

---

[1]  28 U.S.C. § 2254(d) provides—

    (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

        (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

        (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

[2]  Although _Pinholster_ addressed only § 2254(d)(1), it assumed without discussion that review under § 2254(d)(2) is also limited to the existing state-court record, in light of the

determined that those decisions were not unreasonable, which put an end to any further review by the Court.

## II. Motion to Hold Proceedings in Abeyance

While the Sixth Circuit's remand was under consideration by this Court, Petitioner moved to hold these proceedings in abeyance, arguing that a recent decision by the Supreme Court of Ohio expands the scope of the successive postconviction and motion for new trial remedies that Petitioner had previously pursued, thus rendering his sixteenth and seventeenth claims unexhausted. ECF No. 142. The Court must resolve that matter before addressing the Sixth Circuit's remand. Because the Court is not persuaded that Petitioner's claims have been rendered unexhausted, the Court disagrees that abeyance is warranted.

Petitioner argues that a recent decision by the Supreme Court of Ohio, *State v. Bethel*, 192 N.E.3d 470, 483-84 (Ohio 2022), created new procedural avenues for Petitioner to present his sixteenth and seventeenth grounds for relief in state court. Specifically, Petitioner argues that *Bethel* lowered the standard of proof for satisfying Ohio's successor postconviction jurisdictional prerequisites, Ohio Rev. Code § 2953.23(A)(1)(b), and also removed a time limitation for seeking a new trial based on newly discovered evidence pursuant to Ohio Criminal Rule 33. Citing a bevy of mostly non-binding decisions, Petitioner

clear language of the statute. *Pinholster*, 563 U.S. at 185 n.7.

contends that "[f]ederal courts have consistently held that a once-exhausted claim can become unexhausted when a state court, after the completion of the initial exhaustion of a claim, enacts a new or modified state court procedure relevant to the prior adjudication of the claim." ECF No. 142, at PageID 9260–62.

Respondent argues in opposition not only that stay and abeyance is precluded by controlling Supreme Court precedent, *Rhines v. Weber*, 544 U.S. 269 (2005), as well as by Ohio's *res judicata* rule, but also that another stay-and-abeyance to relitigate claims sixteen and seventeen at this late juncture would seriously undermine the state's interests in finality. ECF No. 144, at PageID 9274-75.

As Petitioner acknowledges, this Court recently considered and rejected essentially the same arguments in *Were (n.k.a. Mateen) v. Warden*, Case No. 1:10-cv-698, ECF No. 192 (S.D. Ohio Mar. 15, 2023). *See also Conway, III v. Warden Houk*, Case No. 2:07-cv-947, ECF No. 229 (S.D. Ohio Mar. 15, 2023) (Marbley, C.J.). Petitioner attempts to distinguish his case from (*Were*) *Mateen* and *Conway*, arguing first that those cases did not directly address how the revised procedures created by *Bethel* rendered once-exhausted claims now unexhausted. But this argument ignores the fact that this Court squarely rejected the argument that *Bethel* rendered Mateen's previously exhausted claims newly unexhausted. Specifically, the Court noted that the allegations forming the basis

of the habeas claims that Mateen presented once in a successor state postconviction action and sought to re-present in a second successor postconviction action were identical and that Mateen was not required (or permitted, the Court would add) to repetitively present his federal claims to the state courts once he had done so in one full round of the state's established procedures. *Were (Mateen)*, Case No. 1:10-cv-698, ECF No. 192, at PageID 30323-25. Nothing about the *Cunningham v. Hudson*, 756 F.3d 477, 484 (6th Cir. 2014), decision relied upon by Petitioner in his Reply (ECF No. 145, at PageID 9286), nor the decisions cited by Petitioner in his Motion (ECF No. 142, at PageID 9260-62), persuades this Court otherwise.

Petitioner also attempts to distinguish *Mateen* and *Conway* by arguing that those litigants were denied relief in the state courts on the basis of jurisdictional gatekeeping rather than the merits and because the finding that Ohio's successor postconviction statute and Ohio R. Crim. 33 were no longer adequate and independent state grounds to enforce procedural default cleared the way for Mateen and Conway to obtain a merits ruling in habeas corpus. ECF No. 145, at PageID 9287. First, the Court flatly rejects any suggestion that Petitioner's successor postconviction petition was disposed of any differently than Mateen's and Conway's were. Notwithstanding merits pronouncements that the state courts offered in discussing the claims raised, all three cases were expressly and unmistakably dismissed for want of jurisdiction due to the applicants' failure to

satisfy the statutory jurisdictional requirements set forth in Ohio Revised Code Section 2953.23(A)(1). *Were (Mateen)*, Case No. 1:10-cv-698, ECF No. 192, at PageID 30317-18; *Conway*, Case No. 2:07-cv-947, ECF No. 229, at PageID 16064. In fact, Petitioner _conceded_ that his most recent successor postconviction action was dismissed on this jurisdictional basis when he argued that *res judicata* would not bar another round of successive postconviction proceedings since the prior successive postconviction action was dismissed for want of jurisdiction instead of on the merits. ECF No. 145, at PageID 9283.

Second, Petitioner fails to demonstrate that he should be permitted to pursue a second successive postconviction action because of the differential treatment he will receive from Mateen and Conway, who, he argues, will be entitled to a merits ruling while he will not. If anything, Petitioner is arguably better situated than Mateen and Conway to receive a merits ruling, since the Sixth Circuit expressly remanded Petitioner's case for this Court to reconsider its merits ruling on claims sixteen and seventeen in light of the 2006 Merriman deposition and to issue a new merits ruling. Thus, Petitioner fails to demonstrate that he will somehow be deprived of a merits ruling sufficient to warrant the stay-and-abeyance he requests.

Petitioner's reliance on a recent decision by the Honorable Edmund A. Sargus, Jr., *Pickens v. Shoop*, Case No. 1:19-cv-558 (ECF No. 58), 2022 WL 2802411 (S.D. Ohio July 18, 2022), is misplaced. ECF No. 142, at PageID 9263.

Judge Sargus agreed that *Bethel* lessened the burden of proof for establishing successive postconviction action jurisdictional requirements and for seeking a new trial on the basis of newly discovered evidence, and it granted Pickens' motion for a stay and abeyance. But there, unlike here, the *Brady* claim that Pickens sought to present in a successive postconviction action was newly discovered and had never been presented to the state courts. *Id.* at *2. Additionally, the Respondent-Warden argued that Pickens' *Brady* claim was unexhausted.

Because federal district courts may not adjudicate a mixed habeas petition that contains both exhausted and unexhausted claims, the Supreme Court in *Rhines v. Weber*, 544 U.S. at 275–76, held that district courts have discretion, in limited circumstances, to stay habeas proceedings and hold them in abeyance to allow a petitioner with a mixed petition to return to state court to exhaust his unexhausted claims. But stay-and-abeyance is not warranted here because Petitioner's sixteenth and seventeenth claims are not unexhausted, and the instant Petition is thus not mixed. Petitioner's motion to stay, ECF No. 142, is **DENIED**.[3]

---

[3] Petitioner also requests the Court to extend the appointment of his habeas counsel to represent Petitioner throughout his state court proceedings. ECF No. 142, at PageID 9256. Because the Court has denied Petitioner's motion to stay, the Court also denies Petitioner's motion to extend counsel's appointment.

## III. **Remand Order and *Pinholster***

As noted above, this Court issued final judgment denying Petitioner's claims and dismissing his case on October 2, 2014.  ECF Nos. 85 and 86.  While he was appealing the judgment to the Sixth Circuit, Petitioner sought and obtained a stay of the appeal so that he could return to the state courts to re-present grounds sixteen and seventeen, as well as Merriman's 2006 deposition, to the state courts in a successive postconviction action.  USCA No. 14-4063, Docs. 11 and 15.  Once he completed those state court proceedings, Petitioner sought and obtained an order remanding his case back to this Court to reconsider grounds sixteen and seventeen in light of the 2006 Merriman deposition that this Court previously ruled it could not consider.  ECF No. 93.  On July 12, 2021, this Court issued an Opinion and Order denying Petitioner's motion for relief from judgment and essentially returning the case to the Sixth Circuit for want of jurisdiction and for clarification of the remand.  ECF No. 138. Specifically, the Court issued an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1 stating that it would reconsider grounds sixteen and seventeen in light of the 2006 Merriman deposition *if* it had jurisdiction and *if* the Sixth Circuit stated in the remand order that this Court's doing so would not be inconsistent with *Pinholster*.  *Id*. at PageID 9246.  Kinley then sought and obtained the instant order for remand.  USCA No. 14-4063, Docs. 64 and 67.

Notwithstanding the arguments presented to the Sixth Circuit by the

parties, both for and against *Pinholster*'s precluding consideration of Merriman's 2006 habeas corpus deposition, neither the Sixth Circuit's original remand order nor the instant remand order specified why *Pinholster* does not preclude this Court from considering that deposition. And it is not for this Court to speculate what the reason or reasons might be; it is only for this Court to try in earnest to comply with the remand order, which the Court does below.

## IV. Reconsideration Merits Ruling on Grounds Sixteen and Seventeen

## A. Previous Decisions

In rejecting Petitioner's sixteenth and seventeenth grounds, this Court emphasized that the state courts' credibility determination was entitled to deference.

Petitioner presented these claims to the state courts in his postconviction action. The trial court, in denying Petitioner's postconviction petition following an evidentiary hearing, stated that it had had "first hand knowledge" of the credibility of Merriman's trial testimony, ECF No. 102-12, at PageID 4312. To be clear, the judge who rejected Petitioner's postconviction actions and presided over the postconviction evidentiary hearing did not preside over Petitioner's trial—the only state court proceeding during which Merriman provided live testimony. Petitioner was tried before a three-judge panel that consisted of presiding judge Gerald F. Lorig, as well as judges Douglas W. Geyer and Robert D. Nichols. Petitioner's

postconviction action was initially assigned to Judge Lorig, but he was replaced

by Judge Richard J. O'Neill in an October 21, 1996 order on Petitioner's motion

to recuse Judge Lorig. Then, retired Jackson County Judge Thomas W. Mitchell

replaced Judge O'Neill in a November 12, 1998 order on Petitioner's motion to

recuse all Clark County common pleas judges. It was Judge Mitchell who denied

Petitioner's initial postconviction action, presided over Petitioner's postconviction

evidentiary hearing following the court of appeals' remand, and who again denied

Petitioner's postconviction action. ECF No. 102-9, at PageID 3223-24; ECF No.

102-12, at PageID 4312-16.

Upon consideration of the trial record, as well as testimony, evidence, and

arguments presented in postconviction, Judge Mitchell said the following about

Merriman's credibility:

> Mr. Merriman had originally testified under oath that Defendant
> [Kinley] had confessed to him of committing the crime. This
> undoubtedly had some influence on the trier of the facts. Mr.
> Merriman in two subsequent affidavits produced by the Public
> Defender recants his original testimony.
>
> In an interview with the prosecutor he reaffirmed his original
> testimony and said his affidavits given to the Public Defender were
> false. Defendant, however, later gave a similar affidavit to the Public
> Defender who tried to enter it into evidence as an exception to the
> hearsay rule. The Court allowed it for whatever value that it might
> have even though it was hearsay and the witness previously avoided
> the hearing and was obviously a perjurer, a convicted felon and a
> fugitive.
>
> His testimony, with or without the affidavit is scarcely credible or
> worthy of belief.

ECF No. 102-12, at PageID 4314.  After recounting the prosecutors' testimony

denying that Merriman was offered anything for his testimony in Petitioner's case,

the trial court concluded as follows:

> One last word about the so called affidavits of Donald Merriman.
> An examination shows these affidavits to have been previously
> prepared and Mr. Merriman's signature obtained by the Public
> Defender, a very dubious procedure at best.
>
> Both the affidavit of Mr. Doughty [concerning Petitioner's jury
> waiver] and Mr. Merriman were subject to the hearsay rule and
> neither witness could be cross-examined as to the information
> contained thereon.    Defendant failed to prove that Donald
> Merriman['s] original testimony was false.
>
> This Court had no opportunity to test Donald Merriman['s] credibility
> because he did not show up for the hearing.
>
> The Court finds that the Defendant did not meet the burden of
> proving any violation of his Constitutional rights under Ohio Revised
> Code, Section 2933.21.
>
> These objections will be overruled and the petition dismissed.

ECF No. 102-12, at PageID 4316.

> The Court of Appeals for Clark County affirmed on appeal.  Regarding

Merriman, the appellate court stated:

> Kinley's second argument is that the trial court erred in not granting
> him relief on his claim that one of the witnesses, Donald Merriman,
> committed perjury at Kinley's trial.  Merriman testified at Kinley's trial
> that Kinley had confessed to him that he had killed his girlfriend and
> her son.  Merriman was the only person to whom Kinley allegedly
> confessed the crime.  Kinley argues that Merriman perjured himself
> at Kinley's trial in exchange for leniency from the state in connection
> with sentencing on a conviction for grand theft.  In support of this

contention, Kinley introduced two affidavits signed by Merriman, in which he stated that he had lied at Kinley's trial and had done so in order to obtain leniency from the state. The affidavits were procured by Assistant State Public Defender Kathryn Sandford, who visited Merriman in prison in connection with the postconviction proceedings. Kinley also notes that Merriman received only sixty days in jail on a charge that carried a maximum of eighteen months and that this was despite his not originally appearing for his sentencing on February 28, 1991. Furthermore, Kinley contends that nothing was done to compel Merriman to appear. It was during this time that Merriman testified at Kinley's trial, but he was not arrested at that time. He was finally brought in for sentencing on May 15, 1991, at which time he was given sixty days when the prosecutor on the case, Darnell Carter, reminded Judge Lorig that Merriman had testified in Kinley's case. Kinley's attorneys were unable to locate Merriman to have him testify at the postconviction relief hearing.

The state, in an affidavit by [Assistant Prosecutor David] Smith, one of the prosecutors on Kinley's case, denied that Merriman was promised leniency in exchange for his testimony. Carter testified that he had not known Merriman was going to testify at Kinley's trial and that he had arranged for Merriman to turn himself in when he had seen him at the barber shop. Carter even testified that, due to Merriman's failure to appear for sentencing, he had been inclined to recommend more than the six months he had intended to recommend. However, upon being made aware of Merriman's testimony in Kinley's trial, Carter decided to recommend six months. Judge Lorig then decided to sentence Merriman to sixty days.

Also, in 1997, [prosecutors] Schumaker, Smith, Carter, and Collins visited Merriman in prison. Schumaker, Smith, and Collins testified that they had questioned Merriman regarding the two affidavits and that he had told them that his trial testimony had been true and that he had signed the affidavits because Sandford had "played upon his conscience" and so Sandford would leave him alone. Smith and Schumaker also testified that they had told Merriman that he did not have to worry about perjury charges.

As with Kinley's first argument [about his jury waiver], we are dealing with a credibility determination by the trial court. Kinley's

argument relies on 1) Merriman's affidavits and 2) the suspicious nature of Merriman's sentencing. However, the state presented evidence that Merriman had recanted his affidavits. Also, two prosecutors, Carter and Smith, denied that there was a deal. Kinley attempts to impeach the credibility of Merriman's statements to the prosecutors, arguing that Merriman would have been afraid of perjury charges when talking to the prosecutors. However, Schumaker and Smith testified that they told him he did not have to worry about perjury charges. Kinley attempts to impeach Carter's credibility by arguing that he allowed Merriman to remain at liberty despite his surfacing to testify in Kinley's trial and despite seeing Merriman at a barber shop. However, Carter testified that he had not known Merriman was going to testify. To impeach Carter's testimony, we have only Kinley's speculation that Carter must have known Merriman was going to testify given the small close-knit nature of the prosecutor's office. However, this is not sufficient for us to second guess the trial court's conclusion that Carter was credible.

As with Kinley's first argument, the trial court could have decided in favor of either side based on the evidence. However, the trial court determined that the state's evidence was more credible. Without being able to observe Merriman on the stand, the trial court was left with weighing Merriman's testimony at trial and his statements to the prosecutors while he was in prison against his affidavits recanting his trial testimony, the admissibility of which is questionable. Even assuming that the affidavits were admissible, we cannot find that the trial court erred in deciding that the evidence presented by Kinley did not prove that Merriman had lied at trial or that the state had promised him leniency. Clearly, Merriman has lied at least once regarding Kinley. However, it is impossible for this court to determine which of Merriman's statements were lies and which were the truth. Furthermore, while there is evidence that Merriman was given a lighter sentence after the fact because of his testimony, there is no evidence of a promise of leniency to Merriman prior to his testimony. The trial court decided that Merriman's affidavits were not credible and concluded that his trial testimony was credible. Such credibility determinations are within the discretion of the trial court. We therefore find that the trial court's decision was not against the manifest weight of the evidence on Kinley's claim that Merriman gave perjured testimony at Kinley's trial.

Case No. 3:03-cv-127                                                    Page 18 of 41

ECF No. 102-14, at PageID 4749-52.

As noted above, in rejecting Petitioner's sixteenth and seventeenth grounds, this Court repeatedly emphasized that the state courts' credibility determination was entitled to deference:

> The state court was confronted with a question of credibility. In essence, the court was required to determine which version of Mr. Merriman's testimony to believe. It is clear that Mr. Merriman lied at least once about his testimony at Mr. Kinley's trial; that is, either it was true or not true and that he either did or did not receive consideration from the state for providing that testimony. While the post-conviction court had Mr. Merriman's un-cross-examined affidavit testimony before it, the court also had Mr. Merriman's cross-examined trial testimony as well as the in-court cross-examined testimony of the three prosecutors who met with Mr. Merriman in the Warren Correctional Facility. When assessing witness credibility, a habeas court's review becomes more deferential, as appellate courts are in no position to second guess credibility findings made by the trier-of-fact. See *Seymour v. Walker*, 224 F.3d 542, 551-52 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001). In view of the conflicting evidence before the post-conviction court as well as a habeas court's deferential review, this Court cannot say that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Report and Recommendations, ECF No. 67, at PageID 572.

> *Pinholster* plainly precludes this Court from considering the Merriman deposition. Without that evidence, the state courts' credibility decision is entitled to deference.

Supplemental Report and Recommendations, ECF No. 77, at PageID 677.

> As the Magistrate Judge noted, front and center in Petitioner's claim is a credibility determination made by the state trial court and affirmed by the state appellate court as to which version of Donald Merriman's story to believe.

Case No. 3:03-cv-127                                      Page 19 of 41

\* \* \*

In sum, the foregoing supports the Magistrate Judge's determination that the state trial court's credibility determination enjoys a presumption of correctness which Petitioner failed to rebut by clear and convincing evidence, and that the state court's determination was not objectively unreasonable in light of the evidence that was presented in postconviction.

Opinion and Order, ECF No. 85, at PageID 783, 789.

## B. Legal Standards

### 1. Standard of Review

In its original decision rejecting Petitioner's claims, this Court stated that its review of the central issue, *i.e.*, the state courts' credibility determination, was governed by "two unquestioned standards":

1. Pursuant to 28 U.S.C. § 2254(d)(2), a federal habeas court may not grant relief on a claim adjudicated on the merits by the state court unless the state court's decision involved a factual determination that was unreasonable in light of the evidence presented at the state court proceeding; and

2. Pursuant to 28 U.S.C. § 2254(e)(1), a factual finding made by a state court shall be presumed correct unless rebutted by clear and convincing evidence.

Opinion and Order, ECF No. 85, at PageID 783–84. The Court is left to assume from the remand order that the latter still applies, but the former does not. That is, the Court construes the remand order as directing the Court to review grounds sixteen and seventeen *de novo*.

The remand order requires the Court to reconsider its decision rejecting

grounds sixteen and seventeen in view of evidence—the 2006 Merriman deposition——that the state courts did not have before them in rejecting the claims during Petitioner's initial postconviction action. That flies in the face of the Supreme Court's *Pinholster* decision, which, as noted above, held that in determining whether a state court's merits adjudication was unreasonable as set forth in 28 U.S.C. § 2254(d), a habeas court must confine its review to the evidence that the state court had before it. The Court thus construes its directive as being to reconsider whether grounds sixteen and/or seventeen are meritorious, and *not* to determine whether the state courts' initial postconviction decisions rejecting the claim were based on an unreasonable factual finding.

The Court cannot presume that the remand order, in directing the Court to reconsider grounds sixteen and seventeen in view of the 2006 Merriman deposition, was directing the Court to consider whether the state courts' decision rejecting those claims in Petitioner's *successive* postconviction proceedings— during which the Merriman deposition was presented—constituted a merits adjudication whose reasonableness the Court should assess en route to reconsidering the merits of grounds sixteen and seventeen. For, in those successive postconviction proceedings, notwithstanding whatever merits pronouncements the state courts offered, the state courts ultimately and unmistakably denied Petitioner's claims *not* on the merits, but for want of jurisdiction due to Petitioner's failure to satisfy the statutory requirements for filing

a successive postconviction action.  That would mean that the claims were denied as procedurally defaulted, leaving this Court with no adjudication on the merits requiring § 2254(d) deference.

The Sixth Circuit addressed this very scenario in *Gumm v. Mitchell*, 775 F.3d 345, 362 (6th Cir. 2014), and held that "[d]e *novo* review is appropriate in this case because the state court did not adjudicate this claim on the merits and *did not address the issue in an opinion in which the court had jurisdiction over the matter*." (emphasis added).  The Sixth Circuit went to explain:

> This Court and others have held that where a state court decides a petitioner's claim on alternative grounds, one on the merits and the other on a procedural bar ruling, a federal habeas court may still review that court's merits analysis and apply AEDPA deference to that adjudication. (citations omitted).  *However, this case is not such a case.*  Instead, the Ohio courts have clearly indicated that § 2953.23 denies courts subject matter jurisdiction over claims that cannot meet the statute's stringent requirements.  The Ohio courts have interpreted their own law to conclude that where a court lacks jurisdiction, any judgment on the merits is rendered void ab initio. This Court should not reinterpret an issue of state law that has already been interpreted by the state courts.  (citations omitted). Therefore, we apply *de novo* review to Petitioner's *Brady* claim.

*Id.* (emphasis added).  Because Petitioner's successive postconviction proceedings did not yield an adjudication on the merits, this Court will apply *de novo* review to grounds sixteen and seventeen.

Of course, *de novo* review is not without its own constraints.  The Sixth Circuit has held that a constitutional violation at trial does not warrant habeas corpus relief if the error was harmless.  *See, e.g., Campbell v. Bradshaw*, 674

F.3d 578, 596 (6th Cir. 2012) ("The question is thus whether the trial court's error was harmless or prejudicial. An error is not harmless if it had a substantial and injurious effect or influence in determining the outcome of the case." (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); and *Doan v. Carter*, 548 F.3d 449, 459 (6th Cir. 2008))).

Additionally, as noted above, § 2254(e)(1) still applies because its language, unlike § 2254(d)'s language, does not require an adjudication on the merits (or any other occurrence other than the finding of a fact for that matter) to trigger its applicability. And the Supreme Court has issued no subsequent decision, such as *Pinholster* vis-à-vis § 2254(d), saying otherwise. Section 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). As the Court noted in its previous decision denying relief, the "clear and convincing" standard is an exacting one to meet. Opinion and Order, ECF No. 85, at PageID 785–86 (collecting cases).

## 2. Grounds Sixteen and Seventeen

Petitioner argues in his sixteenth ground for relief that his rights to due process and a fair trial were violated because a material witness for the State of

Ohio, Merriman, gave false and/or inaccurate testimony against Petitioner.

Petition, ECF No. 2, at PageID 893.  Petitioner argues in ground seventeen that

his convictions and sentences are unreliable and violate his rights to due process

and a fair trial because the State of Ohio elicited said false testimony at the trial.

*Id.*, at PageID 895.

To establish the denial of due process or prosecutorial misconduct from

the admission of allegedly false testimony, the petitioner has the burden to show,

among other things, that the testimony at issue was actually false.  *United States*

*v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).

### 3. Recantations and Credibility Determinations

No less so now than when this Court initially rejected Petitioner's claims is

the fact that, in general, courts view with suspicion subsequent recantations,

even under oath, of prior testimony.  The Sixth Circuit is no exception.  In *Welsh*

*v. Lafler*, 444 F. App'x 844 (6th Cir. 2011), the circuit determined, upon *de novo*

review no less, that the victim's sworn recantation of testimony was insufficient to

warrant habeas corpus relief:

> Nevertheless, T.B.'s sworn recantation must be viewed with
> caution.  *Knickerbocker v. Wolfenbarger*, 212 Fed.Appx. 426, 433
> (6th Cir. 2007), *cert. denied*, 552 U.S. 896, 128 S.Ct. 233, 169
> L.Ed.2d 162 (2007) (unpublished opinion) ("Affidavits by trial
> witnesses recanting their testimony are viewed with 'extreme
> suspicion.'") (quoting *United States v. Willis*, 257 F.3d 636, 645 (6th
> Cir. 2001)).  This Circuit has previously held that "[e]ven if accepted,
> a post-trial recantation is generally not sufficient to grant habeas
> relief absent constitutional error."  *Bower v. Curtis*, 118 Fed.Appx.

901, 908 (6th Cir. 2004) (unpublished opinion). T.B.'s affidavit has never been corroborated with other evidence of innocence. *See id.* Moreover, the affidavit itself is troubling because it includes inconsistencies, such as the statement that T.B. and W.B. did not frequently stay over at Welsh's house on the weekends. Welsh himself explicitly contradicted this statement at trial. Thus, the Court concludes that the recantation here is an insufficient basis upon which to grant habeas relief regardless of the standard of review applied. *Cf. Souter v. Jones*, 395 F.3d 577, 590-97 (6th Cir. 2005) (discussing instance where recantation of expert testimony "rais[ed] sufficient doubt about [defendant's] guilt and that undermin[ed] confidence" in the jury's verdict).

*Welsh*, 444 F. App'x at 850.

In *Carter v. Mitchell*, 443 F.3d 517, 539 (6th Cir. 2006), the Sixth Circuit was faced with recantations that, like Merriman's herein, were themselves retracted—though, unlike Merriman's, were not subsequently doubled-down on and were considered in the context of excusing procedural default upon a showing of actual innocence. The Sixth Circuit found the affidavits at issue to be "of little value, as they merely recant their trial testimony." *Id.* (quoting *Dobbert v. Wainwright*, 468 U.S. 1231, 1233-34 (1984) (Brennan, J., dissenting from denial of certiorari) ("Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction.")) (additional citations omitted).

As factual findings go, credibility determinations enjoy "special deference."

*See Allen v. Mitchell*, 953 F.3d 858, 863 (6th Cir. 2020) ("First, because the determination of juror impartiality is 'essentially one of credibility, . . . the trial court's resolution of such questions is entitled . . . to special deference.'" (citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984))); *see also Miller-El v. Cockrell*, 537 U.S. 322, 339-40 (2003) (addressing deference accorded to trial court's determination of a prosecutor's intent following a *Batson* challenge); *Bryan v. Bobby*, 843 F.3d 1099, 1106 (6th Cir. 2015) ("A state-court determination that a veniremember's views [on capital punishment] fall afoul of *Witt* is a factual finding, state-court resolution of which is presumed correct."); *Mack v. Bradshaw*, Case No. 1:04-cv-829, 2021 WL 4477882, at *27–28 (N.D. Ohio Sep. 30, 2021) (addressing "special deference" accorded to trial court's determination of a potential juror's impartiality). Of course, as the Court noted earlier, the judge who presided over Petitioner's trial, during which Merriman testified, was not the judge who presided over Petitioner's postconviction proceedings—during which Merriman's affidavits, but *not* live testimony, were entered into evidence. That judge did, however, hear the in-court, sworn testimony of the four prosecutors who recounted their conversations with Merriman in 1997 about his trial testimony and 1996 affidavits.

## C. Analysis

The Court recounts again the evidence that the state courts and this Court previously considered when assessing the credibility of Petitioner's evidence and

the state's evidence vis-à-vis Petitioner's sixteenth and seventeenth grounds for relief: Merriman's 1991 trial testimony; Merriman's 1996 postconviction affidavits; the 2000 postconviction hearing testimony of Clark County prosecutors Stephen Schumaker, David Smith, Darnell Carter, and Stephen Collins; and the disposition of Merriman's two criminal cases. Added now for this Court's consideration is Merriman's 2006 deposition, which, as explained below, caselaw dictates that the Court consider cumulatively with the other evidence.

As explained earlier, this Court must review grounds sixteen and seventeen de *novo*, since the Court was directed to reconsider the merits of these claims with the benefit of evidence that the state courts did not have when those courts rejected these claims in postconviction—Merriman's 2006 deposition. But as also noted above, this Court's review is still circumscribed by 28 U.S.C. § 2254(e)(1), which means that this Court must presume as correct any factual determination made by the state courts, unless Petitioner rebuts that presumption of correctness by clear and convincing evidence. And the state courts found that the state's evidence (crediting Merriman's trial testimony over his subsequent recantations) was more credible than Petitioner's evidence with respect to Merriman's varying accounts. That credibility determination will be presumed correct, absent a showing of clear and convincing evidence by Petitioner to rebut it.

Of the "clear and convincing" standard, the Supreme Court has stated that

"[t]he standard is demanding but not insatiable[,] and that "'deference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). In the *Miller-El* cases, the Supreme Court found the cumulative evidence of discrimination, vis-à-vis a *Batson* challenge, "too powerful to conclude anything but discrimination," and rejected the court of appeals' finding that the "clear and convincing" standard had not been met as a "dismissive and strained interpretation" of the evidence. That evidence, viewed cumulatively, included numbers demonstrating that the prosecutors used their peremptory challenges to strike 91% of the eligible African-American venire members; examples of the prosecutors using a proffered reason for striking black panelists while allowing similar nonblacks to serve; the prosecution's shuffling of the entire venire panel, enquiry into views on the death penalty, and questioning about minimum acceptable sentences; and "widely known evidence of the general policy" of that prosecutor's office to exclude black venire members from juries at the time Miller-El's jury was selected. *Id*. at 241-65.

In *Bowling v. Parker*, 344 F.3d 487, 519 (6th Cir. 2003), addressing claims of improper jury selection, the Sixth Circuit said of the "clear and convincing standard" that "[t]he question is not whether the trial judge was wrong or right in his determination of [juror] impartiality, but merely whether his decision was '*fairly supported by the record*.'" (emphasis added) (cleaned up). Recently, the Sixth

Circuit concluded that mere "disagreements with the inferences reached by the state court" did not establish clear and convincing evidence that those factual findings were erroneous. *Chinn v. Warden, Chillicothe Correctional Institution*, 24 F.4th 1096, 1106 (6th Cir. 2022).

In *Haight v. Parker*, Case No. 3:02-cv-206-S, 2015 WL 13548182, at *12 (W.D. Kentucky Jul. 17, 2015), the district court concluded that "[a] clear factual error constitutes an unreasonable determination of the facts in light of the evidence presented if the state court's determination of facts *is in conflict with clear and convincing evidence to the contrary*." (emphasis added) (citing *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003)). In *McKee v. Hart*, Case No. 5:16-cv-410-HRW-HAI, 2017 WL 2371833, at *4 (E.D. Ky. Apr. 6, 2017), the district court stated that "words alone are not 'clear and convincing evidence' of what they assert." (cleaned up). Similarly, in *Render v. Warden, Southern Ohio Correctional Facility*, 889 F. Supp. 2d 1014, 1021 (S.D. Ohio 2012), a court within this district concluded that the petitioner's "self-interested contradictory account of his police interrogation" was "insufficient to constitute 'clear and convincing evidence' rebutting the trial court's assessment of the witnesses' credibility in favor of" the interrogating officer.

Under none of the definitions set forth above can this Court find that the evidence, now including Merriman's 2006 deposition, clearly and convincingly rebuts the state court's credibility determination that Merriman's recantations of

his trial testimony were not to be trusted. Trial Court Postconviction Decision, ECF No. 102-12, at PageID 4314, 4316; Appellate Court Postconviction Decision, ECF No. 102-14, at PageID 4749–52.

As a preliminary matter, neither the fact that the 2006 deposition is the most recent version of Merriman's testimony, nor the fact that it renders more versions in favor of Petitioner than not, exempts the deposition from the suspicion that is generally (and, in the words of Justice Brennan, "properly") afforded recantations. Multiple recantations do not constitute clear and convincing evidence, especially not here, and cannot sustain the extraordinary remedy of habeas corpus relief. *See Bower v. Curtis*, 118 F. App'x at 908 ("[e]ven if accepted, a post-trial recantation is generally not sufficient to grant habeas relief absent constitutional error."); *see also Welsh*, 444 F. App'x at 850 (same); *Davis v. Bradshaw*, 900 F.3d 315, 329-30 (6th Cir. 2018) (finding unreliable recantation offered to demonstrate actual innocence exception).

Considerations for assessing the credibility of a subsequent recantation of prior sworn testimony include motives that may have prompted the recantation, timing/delay of the recantation, possible motives (other than truth) for the original sworn testimony, and inconsistencies within the witness's account or between the witness's account and other witnesses's accounts and the evidence. *Hyman v. Brown*, 927 F.3d 639, 660 (2nd Cir. 2019). Courts are loath to credit a recantation that is uncorroborated by any additional evidence, *see, e.g., Jones v.*

*Taylor*, 763 F.3d 1242, 1248 (9th Cir. 2014), or to find credible a witness who made numerous contradictory statements, *see, e.g., Graves v. Cockrell*, 351 F.3d 143, 153 (5th Cir. 2003).

These indicators of reliability have been employed in the Sixth Circuit. *See Davis*, 900 F.3d at 329-30 (corroboration vis-à-vis changed story); *Freeman v. Trombley*, 483 F. App'x 51, 63 (6th Cir. 2012) (timing, corroboration, refuted by other affiants); *Turner v. Romanowski*, 409 F. App'x 922, 930 (6th Cir. 2011) (reasonable juror's dilemma in determining whether he was lying then or now); *Giles v. Wolfenbarger*, 239 F. App'x 145, 147-48 (6th Cir. 2007) (discounting recantation evidence where there was no evidence concerning authenticity, motivation of affiant, circumstances of execution of affidavit, timing, consistency with other evidence); *Stines v. United States*, 571 F. App'x 384, 388-89 (6th Cir. 2014) (finding "inherently incredible" recanting testimony ten years after trial testimony, evasiveness and incompleteness, consistency of prior testimony with evidence at trial); *Cleveland v. Bradshaw*, 65 F. Supp. 3d 499, 523 (N.D. Ohio 2014) (self-interested motives, consistency with trial evidence, specificity); *Hasan v. Ishee*, Case No. 1:03-cv-288, 2018 WL 898970, at *24-25 (S.D. Ohio West. Div. Feb. 15, 2018) (timing); *Thomas v. United States*, CV. No. 2:03-cv-02416-JPM-tmp, 2015 WL 5076969, at *180 (W.D. Tenn. Aug. 27, 2015) (timing, motives).

At the heart of determining whether grounds sixteen and seventeen

warrant relief—*over* the hurdle of the state courts' credibility determinations—are multiple recantations and retractions. As noted above, courts view with suspicion multiple recantations and retractions. *See, e.g, Graves,* 351 F.3d at 153. This Court faces the impossible question that is inevitably posed by recantations: Was Merriman lying then, or is he lying now?

Consider the following. In 1991, Merriman testified at Petitioner's trial that Petitioner admitted to killing his girlfriend and her son. He also testified that he received no deals in exchange for that testimony. In 1996, Merriman changed course, averring in two affidavits drafted by Petitioner's postconviction counsel that Merriman lied when he testified that Petitioner made any such confession and that Merriman further lied by testifying at trial that his testimony was not motivated by hopes of receiving leniency in his own criminal cases (i.e., recanting his trial testimony). In 1997, while incarcerated, Merriman changed course again—telling four Clark County prosecutors that his *recanting affidavits* were false and his *original trial testimony* was true. In other words, he retracted his recantation. Then, in 2000, while at a VA hospital in Dayton, Merriman switched gears yet again by assuring Petitioner's postconviction counsel that his *recanting affidavits* were true, that his *original trial testimony* was made up, and that he was willing to testify to the same at Petitioner's postconviction hearing. In sum, at the VA hospital, Merriman retracted his retraction of his recantation. Merriman did not end up testifying at the postconviction hearing and instead deliberately made

himself unavailable for the same. Finally, in 2006, when he was deposed for this habeas corpus proceeding, Merriman again declared that his 1996 affidavits were true and his trial testimony was false—thus reiterating his retraction of his retraction of his recantations.

What is this Court to do with all these versions of testimony? *See, e.g.,* *United States v. Davis*, 767 F. App'x 714, 733-34 (11th Cir. 2019) ("when a witness retracts a recantation, the witness's version of events remains exactly as it was at trial.") (citations omitted and cleaned up). Merriman's multiple recantations and retractions make it difficult to determine which version is more credible and certainly add little to the clear-and-convincing standard that Petitioner must satisfy to rebut the state courts' credibility determinations.

Nor is the Court persuaded that the dispositions of Merriman's two criminal cases—a 1989 forgery case and a 1990 grand theft case—raise an inference that he was promised leniency in exchange for testifying against Petitioner at Petitioner's trial. Merriman's forgery case involved five counts; he pleaded guilty to three and served one year in prison. But he was out of prison by the time he testified at Petitioner's trial. Trial Transcript, ECF No. 104-1, at PageID 7333–34; Postconviction Hearing Transcript, ECF No. 104-2, at PageID 8687. In the grand theft case, Merriman pleaded guilty to the indictment as charged on January 24, 1991, and was scheduled to be sentenced on February 28, 1991, but he failed to appear and was not sentenced until May 15, 1991. Postconviction Hearing

Transcript, ECF No. 104-2, at PageID 8721–25. Although Merriman could have received eighteen months' imprisonment in that case, the prosecutor recommended only six months (in keeping with his original promised recommendation), despite Merriman's failure to appear for the original sentencing date, after learning that Merriman had previously provided testimony that was beneficial to the state. *Id*. at PageID 8737-39. The prosecutor made clear, however, that no promise relating to Merriman testifying against Petitioner had been made to secure Merriman's plea on January 24, 1991. *Id*. at PageID 8740. The trial judge did not accept the prosecutor's six-month recommendation and instead sentenced Merriman to just sixty days.

Nothing about the pleas and sentences raises red flags that Merriman was *promised* leniency in exchange for testifying against Petitioner. The forgery case was completely disposed of *before* Merriman testified at Petitioner's trial, and even though Merriman was sentenced on the grand theft charge *after* he testified at Petitioner's trial, Merriman pleaded guilty to the grand theft charge *before* he testified at Petitioner's trial. That the prosecutor decided after the fact to adhere to his recommendation of six months, and that the trial court decided after the fact to give Merriman just sixty days, in consideration of Merriman's having testified at Petitioner's trial does *not* establish that those considerations were given in *exchange* for Merriman's testimony at Petitioner's trial, sufficient to contribute to a showing of clear and convincing evidence to question Merriman's

in-court, under-oath, cross-examined testimony at Petitioner's trial that Merriman was not providing testimony in order to receive a "deal" from the prosecution. Trial Transcript, ECF No. 104-1, at PageID 7333–34, 7346.

The substance of Merriman's 2006 deposition adds little to the calculus. Merriman's recollections were muddled (perhaps understandably, given the passage of time), and he was unable to provide any elaboration, explanation, or corroboration about the version of events he was espousing at that time. Further, his 1996 affidavits recanting his trial testimony, and his 2006 deposition retracting his statements to prosecutors disavowing those 1996 affidavits, were not offered of his own volition but rather were sought out by Petitioner's counsel. That undercuts Merriman's claims at various times that he recanted out of conscience.  It is clear throughout Merriman's 2006 deposition that his "understanding" of any consideration he would receive for testimony implicating Petitioner was imprecise and based on Merriman's personal assumptions and not on any representations relayed by his attorney(ies).  Three prosecutors who testified at the postconviction hearing (that Merriman intentionally dodged) denied that they made any deals or promises in exchange for Merriman testifying against Petitioner or were aware of anyone else promising such deals.  ECF No. 104-2, at PageID 8651–51 (Schumaker); at PageID 8684–85 (Smith); at PageID 8740–41 (Carter).  And the Clark County Sheriff's Office detective who investigated the murders of Thelma and David Miller, Ronald Rude, denied the

allegation in paragraph seven of Merriman's June 19, 1996, affidavit that he (Detective Rude) assured Merriman that Merriman would receive favorable treatment for testifying against Petitioner. ECF No. 104-2, at PageID 8749.

In sum, Merriman's 2006 deposition contributes very little to the clear-and-convincing standard that Petitioner must satisfy to rebut the presumption of correctness afforded to the state courts' credibility determinations.

As noted above, delay is another element that contributes to courts' wariness of recantations. "Long-delayed affidavits, like those offered here, which seek[] to exonerate a petitioner and shift the blame for the crime to another person are 'treated with a fair degree of skepticism.'" *Strayhorn v. Booker*, 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010) (quoting *Herrera v. Collins*, 506 U.S. 390, 423 (1993)). After noting that recantations generally are viewed with "extreme suspicion," the district court in *Strayhorn* observed that "[t]he affidavit submitted by petitioner does not explain why the witnesses waited nearly two years after petitioner's trial to come forward." *Strayhorn*, 718 F.Supp. 2d at 874. The Court notes that, here, Merriman's affidavits recanting his testimony came more than six years after Petitioner's trial (and came about due to Petitioner's postconviction counsel seeking them, not Merriman's proactively offering them).

Another factor for assessing reliability is whether there was a suspect motive for the recantation, such as to avoid prosecution, and whether, concomitantly, the original statement or testimony was given without immunity

and overwhelmingly against the affiant's penal interests. *Carriger v. Stewart*, 132 F.3d 463, 475 (9th Cir. 1997). Here, Merriman's motivation(s) are difficult to pin down. Merriman's trial testimony was either the truth or was motivated by an assumption or hope for leniency in pending criminal cases. His 1996 postconviction affidavits were either true or signed to get postconviction counsel to leave him alone. That the former would have placed Merriman at risk for being charged with perjury can be discounted since, as he testified at his 2006 deposition, he was under the assumption at that time that it was actually *testifying* at the postconviction hearing, and not merely signing the two affidavits, that subjected him to perjury. Deposition Transcript, ECF No. 44-1, at PageID 202–03. It is thus similarly unlikely that the retractions of his recantations that Merriman made to prosecutors in 1997 were motivated by avoiding perjury charges stemming from trial testimony. In his 2006 deposition, Merriman testified that he was recanting his trial testimony even at the risk of being charged with perjury because he had changed his life around, "got saved in church," needed to tell the truth, and could not let Petitioner be executed on the basis of a lie or have that on his conscience. *Id.*, at PageID 222. Again, these multiple changing stories make it difficult to pin down Merriman's motivations.

Examples of courts finding recantations credible show how short the instant case falls. In *Gable v. Williams*, 49 F.4th 1315, 1323-24 (9th Cir. 2022), for example, the federal appellate court credited subsequent recantations of

sworn statements where nearly every witness who had implicated the defendant recanted their statement, where there was substantial evidence of a third party's guilt, and where the recantations were consistent with and supported by the evidence presented at trial. In *Howell v. Superintendent Albion SCI*, 978 F.3d 54, 60-61 (3rd Cir. 2020), the federal appellate court reversed a district court's categorical rejection of a recantation and remanded the case for an evidentiary hearing, where two witnesses recanted their testimony implicating the petitioner and implicated an alternative suspect who confessed to the crime under oath.

Again, the Court acknowledges that Merriman's deposition took place in 2006—seventeen years after his professed reunion with Petitioner in prison, fifteen years after he testified at Petitioner's trial, and ten years after he provided affidavits to Petitioner's postconviction counsel. But this Court is tasked with determining whether all of the evidence, now including Merriman's deposition, constitutes clear and convincing evidence to rebut the presumption of correctness to which the state courts' credibility determinations, favoring Merriman's trial testimony and discrediting his recantations, are entitled. That countenances against eliding deficiencies and gaps in Merriman's 2006 deposition just because of the passage of time. After careful consideration, this Court cannot find clear and convincing evidence sufficient to rebut the presumption of correctness.

In the alternative, even if unbound by a presumption of correctness, the

Court would not be persuaded that Petitioner is entitled to relief. The Court agrees with findings by the state courts that Merriman's trial testimony likely had *an* impact on jurors, as it was the only evidence of an admission of guilt by Petitioner. But, there was other evidence of Petitioner's guilt independent of Merriman's testimony. Shortly before the murders, Petitioner committed acts of violence, and made threats, against Thelma Miller that were witnessed by others and testified to at trial, to wit: Darlene McKeachie, Lisa Tuttle, Cindy Spencer, and Ron Hildenbrand. Victor Bishop, who spent time with Petitioner before and after the murders, testified about Petitioner's having money in a flowered bank envelope and a set of car keys that Petitioner did not have earlier in the day. Despite initially denying that he had ever been at the residence where the murders were committed, two witnesses, Randy Maggard and Kim Funderberg, identified the vehicle belonging to Petitioner's mother that Petitioner had been driving in the area of the residence on the day of the murders, prompting Petitioner to eventually admit that he had visited the residence. Human blood was found in that car and on Petitioner's jacket, and DNA in the blood on the jacket matched David Miller. A machete consistent with having caused the victims' wounds, missing from the garage of the residence where the murders occurred, was found, blood-stained, hidden in a couch in an alley near Petitioner's residence. In view of other evidence of Petitioner's guilt independent of Merriman's testimony, and the general suspicion with which recantations are

viewed by courts even without any presumption of correctness, *see, e.g.,* *Carriger*, 132 F.3d at 483 ("Appellate courts, even on direct review, look upon recantations with extreme suspicion" (Kosinski, J., dissenting)), the Court is not persuaded claims sixteen and/or seventeen can sustain habeas corpus relief.

## V. Conclusion

This Court laments the increasing manner in which courts in habeas corpus are hamstrung by decisions such as *Pinholster* and appreciates the opportunity to consider Petitioner's claims untethered by those harsh limitations. And the Court is mindful of the gravity of this matter—Petitioner is, after all, facing a sentence of death. The Court still cannot help but come back to an observation by the state appellate court in affirming the denial of postconviction relief: "Clearly, Merriman has lied at least once regarding Kinley. However, it is *impossible* for this court to determine which of Merriman's statements were lies and which were the truth." ECF No. 102-14, at PageID 4751 (emphasis added). The Magistrate Judge in these proceedings similarly remarked: "In essence, the [trial] court was required to determine which version of Mr. Merriman's testimony to believe. It is clear that Mr. Merriman lied at least once about his testimony at Mr. Kinley's trial; that is, either it was true or not true and that he either did or did not receive consideration from the state for providing that testimony." ECF No. 67, at PageID 572. The position in which the Court now finds itself, vis-à-vis assessing which version of Merriman's story to believe, is no less *impossible*—

Case No. 3:03-cv-127                                                                Page 40 of 41

even with the addition of Merriman's 2006 deposition. That dilemma precludes the grant of habeas corpus relief.

For the foregoing reasons, the Court denies Petitioner's sixteenth and seventeenth grounds for relief as without merit, and the Court reiterates its conclusion that the habeas corpus petition should be dismissed with prejudice.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**